[S.F. No. 23687. Mar. 21, 1978.]

WILLIAM J. CODIGA, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Michael di Leonardo, John F. Hopkins, Hopkins & Carley, Horvitz, Greines & Horowitz and Ellis J. Horvitz for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey and Garrett H. Elmore for Respondent.

**OPINION**

**THE COURT.**—We review recommendation of the Disciplinary Board of the State Bar that William J. Codiga be suspended from the practice of law for three years. (Bus. & Prof. Code, § 6083, subd. (a).)[1]

Petitioner was admitted to practice in 1957 and was involved in a prior disciplinary proceeding resulting in public reproval. The misconduct for which petitioner was reproved involved acts of deceit and willful misrepresentation which occurred during the same time period as in the instant case.

---

[1]Unless otherwise specified, all statutory references are to sections of the Business and Professions Code.

Petitioner is now charged with four separate acts or courses of misconduct. ██ In the first, the Portenga matter, petitioner undertook in 1972 to represent Betty Portenga and her husband in an effort to recover damages for her personal injuries arising out of an automobile accident involving a newspaper as a defendant. Petitioner had represented the newspaper in a number of matters. Additionally, the stock of the newspaper was wholly owned by persons who were petitioner's in-laws. A hearing panel of the Disciplinary Board of the State Bar (see Rules of Proc. of the State Bar, eff. Jan. 1, 1976 [3B West's Ann. Bus. & Prof. Code (1974 ed., 1977 cum.supp.), foll. § 6087; Deering's Cal. Codes Ann. Rules (1976 ed.) at pp. 637-714]) found that because petitioner had not disclosed his conflict of interest and had not obtained an informed consent to the representation, he had failed to properly discharge his duties as an attorney and had willfully violated rules 6 and 7 of the Rules of Professional Conduct. (3B West's Ann. Bus. & Prof. Code (1974 ed.) foll. § 6076 at pp. 384-385.)[2]

██ An attorney representing clients with divergent interests in the same matter, must disclose to his clients all facts and circumstances which may aid them in making a free and intelligent choice of counsel. (*American Mut. Liab. Ins. Co.* v. *Superior Court* (1974) 38 Cal.App.3d 579, 590 [113 Cal.Rptr. 561]; *Lysick* v. *Walcom* (1968) 258 Cal.App.2d 136, 147 [65 Cal.Rptr. 406, 28 A.L.R.3d 368].) ██ The record discloses that when confronted by the Portengas with the question whether the fact he was related by marriage to the owners of the newspaper would make any difference, petitioner replied: "Not a bit in the world. I don't represent those people." It appears, moreover, petitioner knowingly failed to disclose the conflict. A memorandum by petitioner to an associate succinctly states: "I have a conflict on this one [the Portenga matter] but I want you to handle it quietly for me . . . ." In another note petitioner informed an attorney of the conflict and stated "on settlement we will disclose to client."

---

[2]Rule 6 provided at pertinent times herein: "A member of the State Bar shall not accept professional employment without first disclosing his relation, if any, with the adverse party, and his interest, if any, in the subject matter of the employment."

Rule 7 provided at pertinent times herein: "A member of the State Bar shall not represent conflicting interests, except with the consent of all parties concerned."

Rules 6 and 7 were combined in 1975 and now comprise rule 5-102. Rule 5-102 additionally requires *written* consent of the parties. (3B West's Ann. Bus. & Prof. Code (1974 ed., 1977 cum.supp.) foll. § 6076 at p. 65; Deering's Cal. Codes Ann. Rules (1976 ed.) at p. 614.)

A second act of misconduct is designated the Nielsen matter. Petitioner prepared a will which contained a defect or ambiguity. He had drawn similarly worded wills and knew of the problem because of a court's concern in a prior case. After the testator's death petitioner substituted a typed page in the original will in order to cure the defect. Petitioner, who had witnessed the execution of the will, then proceeded to file a declaration under penalty of perjury stating that he had witnessed the testator's execution of the altered will. Such will was admitted to probate. The hearing panel found petitioner had willfully perjured himself and thereby committed acts involving moral turpitude, dishonesty and corruption within the meaning of section 6106.[3] It is a felony to offer as evidence any writing known to have been fraudulently altered (Pen. Code, § 132), or to prepare a false instrument in writing with the intent to produce it as true at any proceeding (Pen. Code, § 134).

Petitioner admits his wrongdoing, but claims his sole purpose was to effectuate the testator's intentions. We have stated on a number of occasions that deceit by an attorney is reprehensible misconduct whether or not harm results and without regard to any motive for personal gain. (*Sullins* v. *State Bar* (1975) 15 Cal.3d 609, 622 [125 Cal.Rptr. 471, 542 P.2d 631]; *Lewis* v. *State Bar* (1973) 9 Cal.3d 704, 713 [108 Cal.Rptr. 821, 511 P.2d 1173].)

The third course of misconduct relates to other wills prepared by petitioner. He was aware that such other wills contained the same defect as contained in the Nielsen will. One of petitioner's associates provided to petitioner the files of those clients whose wills contained the defect. Though attention had thus been called to the problem, petitioner failed to take any action to correct the defect for more than a period of three years before he was charged with misconduct. The hearing panel found petitioner guilty of gross negligence and a failure to discharge his duties as an attorney.

The record is not clear as to the materiality of the alleged defect and petitioner presented expert testimony that the wills, without changes, could reasonably be construed to effect the intended results. But petitioner did not have the benefit of this hindsight at the time of the alleged negligent conduct. As his actions in the Nielsen matter attest,

---

[3]Section 6106 provides in pertinent part: "The commission of any act involving moral turpitude, dishonesty or corruption . . . whether the act is a felony or a misdemeanor or not, constitutes cause for disbarment or suspension."

petitioner was willing to commit perjury in order to correct what he then must have deemed to be a material defect in the will.

Petitioner attempts to minimize his wrongdoing, relying on cases in which the attorney failed to perform obligated services. In each of the cases to which we are referred clients were at least aware of the legal problem requiring resolution. In the instant case petitioner's clients had no notice of a problem in their wills. Petitioner thus had a heavier obligation to initiate corrective action. ■ "[I]nattention to the needs of a client, standing alone, may constitute proper grounds for discipline." (*Doyle* v. *State Bar* (1976) 15 Cal.3d 973, 978 [126 Cal.Rptr. 801, 544 P.2d 937].) ■ The attorney-client relationship in such a situation demands no less than full and adequate notice of the defect to the attorney's clients. At the very least, his inaction constituted less than a faithful discharge of his obligations as well as a violation of his oath and duties as an attorney. (See §§ 6103, 6107.)

■ The fourth course of misconduct found against petitioner is designated the Hoskins matter. In 1971 petitioner was retained by Wesley Hoskins to initiate proceedings for the dissolution of Hoskins' marriage. Petitioner undertook the collection of community assets and deposited such cash funds in his client trust account. Mrs. Hoskins was represented by Raymond Goodrich. Prior to the execution of a marital settlement agreement, petitioner was requested by Goodrich to supply an accounting of all funds received and disbursed by him through the trust account. Petitioner represented to Goodrich that he had paid himself from the trust account fees totalling $1,500. The settlement agreement as subsequently executed provided for additional fees of $1,000 for petitioner and fees of $2,500 for Goodrich.

Petitioner had in fact paid himself $3,317.90 in fees before execution of the settlement agreement. He acknowledges the accounting to Goodrich was false, but claims the accounting was not intended to reflect attorney fees allocable to matters other than the dissolution. He further testified as reason for the misrepresentation that he did not want to expose his client to increased fee charges by Goodrich, who might have expected to be equally compensated with petitioner although such equal compensation would not have been justified. Following execution of the settlement agreement, petitioner additionally paid himself from the trust account $4,686.63 in fees. The agreement provided that if petitioner was entitled to fees in addition to those provided for he was to look exclusively to his client.

The hearing panel found petitioner had willfully misappropriated funds belonging to Mrs. Hoskins in the amount of $2,752.27[4] and had thus committed acts involving moral turpitude, dishonesty and corruption within the meaning of section 6106. (See fn. 3, *ante.*)

Petitioner urges there was no misappropriation as he withdrew only those funds to which he was entitled for legal services performed for Mr. Hoskins; that notwithstanding Mrs. Hoskins' lack of consent, Mr. Hoskins had consented to the disbursements, and his share of the community fund was at all times sufficient to cover amounts disbursed as fees to petitioner. It seems clear petitioner stood in a fiduciary relationship to both Mr. and Mrs. Hoskins by virtue of his control over the community assets in the trust fund. (*Crooks* v. *State Bar* (1970) 3 Cal.3d 346, 355 [90 Cal.Rptr. 600, 475 P.2d 872].) Any disbursement without Mrs. Hoskins' consent thus constituted a breach of the fiduciary duty owed her. Discipline is warranted for such a breach. (See *Simmons* v. *State Bar* (1969) 70 Cal.2d 361, 365-366 [74 Cal.Rptr. 915, 450 P.2d 291].) In addition to his breach of a fiduciary duty, petitioner misrepresented to opposing counsel the amount of such disbursements. Such acts involve moral turpitude within the meaning of section 6106.

In view of petitioner's multiple acts of misconduct the hearing panel of the disciplinary board recommends petitioner be suspended from the practice of law for a term of three years, that the provisions of rule 955, California Rules of Court be imposed, and that petitioner be required to pass the Professional Responsibility Examination prior to his reinstatement as a member of the bar.[5]

---

[4]The $2,752.27 represents Mrs. Hoskins' one-half interest in the total funds disbursed less one-half of the authorized $2,500.

[5]Under new Rules of Procedure adopted by the State Bar effective January 1, 1976, the findings and recommendations of the hearing panel are first reviewed, upon request therefor, by an advisory review panel. (See rules 22.10-22.50, Rules of Proc. of the State Bar [3B West's Ann. Bus. & Prof. Code (1974 ed., 1977 cum.supp.) foll. § 6087, at p. 89; Deering's Cal. Codes Ann. Rules (1976 ed.) at pp. 666-667].) Petitioner requested such review in the instant case and the advisory review panel made findings contrary to those of the hearing panel in two matters: (1) Because there was no clear and convincing evidence as to whether petitioner had advised the Portengas of his apparent conflict of interest, the finding should have been in favor of petitioner and the count dismissed. (2) Although petitioner had made misrepresentations to Hoskins' attorney he had not misappropriated funds because there was no evidence he had not earned the fees or disbursed money without Mr. Hoskins' consent.

The advisory review panel recommended a suspension of one year.

The advisory panel's proposed findings and recommendations have no binding effect. (*Id.,* rules 22.40, 22.50.) After consideration of the advisory panel's recommendations, the hearing panel made no modification of its findings or recommended discipline. Under

Petitioner has engaged in community and civic affairs. Members of the bench and bar have attested to his good reputation and competency as a lawyer. During the period in question, petitioner overscheduled his office workload but he has reorganized his office in an effort to provide more competent service. The State Bar has noted petitioner cooperated fully in the investigation. Petitioner observes he practices in a small community and urges a three-year actual suspension from practice would impose a disproportionately harsh burden on him. He refers us to other disciplinary matters which, he claims, suggest a lesser discipline than that recommended. ■ However, each case must be decided on its own facts. (*Yapp* v. *State Bar* (1965) 62 Cal.2d 809, 819 [44 Cal.Rptr. 593, 402 P.2d 361].) Our concern is not so much with the punitive effect of the discipline to be imposed as it is with the protection of the courts, the public and the profession. (*In re Kreamer* (1975) 14 Cal.3d 524, 532 [121 Cal.Rptr. 600, 535 P.2d 728].) In the final analysis, the discipline to be imposed must be a function of the balancing of relevant factors including mitigating circumstances. (*Doyle* v. *State Bar, supra,* 15 Cal.3d 973, 978-979.)

■ This court must independently examine the record, reweigh the evidence and pass on its sufficiency in State Bar disciplinary matters. (*In re Kristovich* (1976) 18 Cal.3d 468, 475 [134 Cal.Rptr. 409, 566 P.2d 771]; *Emslie* v. *State Bar* (1974) 11 Cal.3d 210, 220 [113 Cal.Rptr. 175, 520 P.2d 991].) ■ ■ ■ Our independent review of the record reveals petitioner has admitted two acts of deceit (the Nielsen and Hoskins matters), one constituting a felony. His conflict of interest in the Portenga matter demonstrates a lack of appreciation for the ethical responsibilities of the profession. Similarly, petitioner's handling of his clients' wills and his disbursement of the Hoskins funds without obtaining proper consent, reflect a serious indifference to professional obligations.

It is ordered petitioner be suspended from the practice of law for three years, that execution of the order of suspension be stayed, and that petitioner be placed on probation for the three-year period upon condition he actually be suspended for one year. It is additionally ordered petitioner be subject to further actual suspension upon application of the State Bar unless, within one year of the effective date of this order, he pass the Professional Responsibility Examination (see *Segretti* v. *State Bar* (1976) 15 Cal.3d 878, 891, fn. 8 [126 Cal.Rptr. 793, 544 P.2d

---

the new rules the decision of the hearing panel is not subject to further review before the State Bar. (*Id.,* rule 23.20 at p. 90.)

929]), and that he comply with California Rules of Court, rule 955. Performance of those acts specified in subdivisions (a) and (c) of rule 955 shall be accomplished within 30 and 40 days, respectively, after the effective date of this order. This order is effective 30 days after the filing of this opinion.

Petitioner's application for a rehearing was denied April 20, 1978.