[S.F. No. 24370. Jan. 13, 1983.]

CLARENCE L. DAVIS, JR., Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Milton Nason and Frederick T. Koyle for Petitioner.

Herbert M. Rosenthal, Truitt A Richey, Jr., and Scott J. Drexel for Respondent.

## Opinion

**THE COURT.**\*—We review, and will adopt, a recommendation of the State Bar Court that petitioner, Clarence L. Davis, Jr., be suspended from the practice of law for three years, but that his suspension be stayed subject to certain conditions, including probation for three years, one-year actual suspension, and compliance with the Rules of Professional Conduct and rule 955 of the California Rules of Court. Petitioner contends, unsuccessfully, that the findings of the State Bar Court are not supported by the evidence and that the discipline recommended is excessive.

Petitioner was admitted to the practice of law on January 20, 1966. In 1976 he was suspended from practice for two years. Probation was imposed without any actual suspension. Thereafter, in 1979, petitioner again received a one-year stayed suspension. Both prior proceedings involved similar misconduct, namely, failure to perform services for clients.

On October 6, 1980, formal proceedings were initiated against petitioner by a notice to show cause charging him with wilful failure to represent a client in violation of his oath and duties as an attorney (Bus. & Prof. Code, §§ 6067, 6103), wilful deception of a court (*id.*, § 6068; Rules Prof. Conduct, rule 7-105(1)), and wilful failure to pursue with reasonable diligence the matter for which he was retained (*id.*, rule 6-101). The State Bar found in petitioner's favor regarding the last charge but concluded that he was guilty of the first two charges. The hearing panel recommended that petitioner be suspended from practice for six months. The review department adopted the hearing panel's findings of fact (by a vote of ten to zero, with two members abstaining), and increased the punishment to three years' suspension with one year actual (by a vote of nine to one, two members abstaining, and one member voting for six months' actual suspension).

### Facts

Because petitioner contests the sufficiency of the evidence, we briefly outline the pertinent facts. Cynthia B. was involved in an automobile accident on December 29, 1977. Shortly thereafter, she contacted petitioner, who agreed to act as her attorney, and to prosecute her claim for personal injuries. He investigated Ms. B.'s claim, but failed to file suit or otherwise settle the claim within the applicable limitations period. The hearing panel concluded that petitioner's conduct constituted a wilful failure to represent Ms. B.

---

\*Before Bird, C. J., Mosk, J., Richardson, J., Kaus, J., Reynoso, J., Drummond, J.,† and Jenkins, J.†

†Assigned by the Chairperson of the Judicial Council.

On March 22, 1979, Ms. B. sued petitioner for malpractice. In response to her complaint, petitioner filed a verified answer in which he denied being her attorney and alleged, as an affirmative defense, that he represented her only in connection with her *property* damage claims. The hearing panel found that this pleading constituted a wilful misrepresentation to the court.

## DISCUSSION

Because Petitioner challenges the sufficiency of the evidence supporting both the failure to represent and the misrepresentation charges, we exercise our independent examination of the record (*Marcus* v. *State Bar* (1980) 27 Cal.3d 199, 201-202 [165 Cal.Rptr. 121, 611 P.2d 462]; *Codiga* v. *State Bar* (1978) 20 Cal.3d 788, 796 [144 Cal.Rptr. 404, 575 P.2d 1186]), concluding that the State Bar Court's findings are amply supported.

### 1. *Wilful Failure to Represent a Client*

Although he concedes that he "missed a deadline," petitioner maintains that his failure to file Ms. B.'s suit was negligent rather than wilful. First, petitioner claims that the evidence does not support a finding that he was retained by Ms. B. to represent her in her personal injury claim. Petitioner cites his own testimony that he did not believe he had agreed to represent Ms. B. after their first meeting. He also relies on several factors—the absence of a formal employment contract, Ms. B.'s statement in January 1978 to petitioner's secretary that she was not injured in the accident, and the police report indicating that the accident involved no injuries. Petitioner observes that, in contrast, he and Ms. B. had signed a retainer agreement when he represented her for a 1975 accident, but that no such agreement was executed with respect to the claim at issue here.

Our review of the record convinces us, however, that petitioner was indeed retained to represent Ms. B. in her claim for personal injuries. At their first meeting, Ms. B. told petitioner that she wanted to bring a suit against the driver of the other vehicle and that she was not concerned about the damage to her car, which would be covered by her insurance. Thereafter, both Ms. B. and petitioner learned that the other driver was insured by the same carrier, so that no insured's deductible offset would be applied to the collision damage to Ms. B.'s car. Ms. B. incurred no uninsured property damage, thus obviating any need for legal representation as to her property claim. The only plausible inference is that she retained petitioner to file a personal injury action.

Additional facts also sustain the foregoing conclusion. Ms. B. testified that petitioner requested medical bills during their first meeting, telling her that these bills were needed to establish her claim. He offered to refer her to a physi-

cian. During the next six months he sent two letters—one to the driver of the other vehicle and one to Highland Hospital requesting medical records—in which he stated that he represented Ms. B. for claims arising from the injuries she sustained in the accident. In November 1978, petitioner's secretary prepared a third letter—to Ms. B.'s employer—again claiming to represent her and requesting information about wages she had lost because of the accident.

It is fundamental that the burden is on petitioner to show that the State Bar's findings are not supported by the evidence. (*Ramirez* v. *State Bar* (1980) 28 Cal.3d 402, 411 [169 Cal.Rptr. 206, 619 P.2d 399]; *Geffen* v. *State Bar* (1975) 14 Cal.3d 843, 852 [122 Cal.Rptr. 865, 537 P.2d 1225].) He has failed to meet this burden. We accord great weight to the hearing panel's evaluation of testimonial evidence (*Nizinski* v. *State Bar* (1975) 14 Cal.3d 587, 595-596 [121 Cal.Rptr. 824, 536 P.2d 72]; *Sampson* v. *State Bar* (1974) 12 Cal.3d 70, 74 [115 Cal.Rptr. 43, 524 P.2d 139]; *Himmel* v. *State Bar* (1971) 4 Cal.3d 786, 794 [94 Cal.Rptr. 825, 484 P.2d 993]), because the panel is in a better position than we to observe the witnesses and hear the testimony. Petitioner's arguments do not persuade us to depart from this general principle, and, accordingly, we defer to the hearing panel's assessment of the conflicts in the testimony which are noted by petitioner. It is significant that the hearing panel's conclusion that petitioner represented Ms. B. for her personal injury claims is especially warranted in this case, because there is documentary support for the testimonial evidence. (*Magee* v. *State Bar* (1975) 13 Cal.3d 700, 708 [119 Cal.Rptr. 485, 532 P.2d 133].)

Petitioner's reliance on the absence of any written contract is likewise unconvincing. No formal arrangements are necessary to establish an attorney-client relationship (*Arden* v. *State Bar* (1959) 52 Cal.2d 310, 315 [341 P.2d 6]), especially where, as here, the existence of the relationship is demonstrated and reinforced by the attorney's own conduct. Petitioner argues that, because he and Ms. B. had entered into a written contract when he previously represented her in 1975, the absence of a written instrument regarding the subject claim indicates that he had not agreed to represent her. A contrary inference is as easily drawn: Having represented Ms. B. in the past, petitioner may have concluded that a written contract was no longer necessary. Petitioner's conduct during 1978 makes this second inference the more plausible of the two. We thus agree with the State Bar Court's finding that petitioner did agree to represent Ms. B. for personal injuries arising from the December 29, 1977, accident.

As an alternative defense, petitioner argues that although informed of Ms. B.'s residual injuries (recurring headaches), he doubted the validity of such a claim because the headaches were "symptomatically similar" to those sustained by Ms. B. in the 1975 accident. Petitioner admits that he never informed Ms. B. of any such conclusion labelling this omission an "error in judgment."

Apparently petitioner would have us view this "error" as a negligent, rather than a wilful, failure to represent her.

While it is incumbent upon an attorney zealously to represent his client, he must always respect and defer to those decisions properly reserved to his client. (See, e.g., ABA Code of Prof. Responsibility, EC 7-7.) We must presume that petitioner was aware of this most basic tenet of advocacy; thus, his usurpation of his client's decision can only be characterized as wilful. If petitioner doubted either his client's credibility or the legitimacy of her claim, he should have questioned her closely and, if his doubts persisted, withdrawn from employment. (See Rules Prof. Conduct, rule 2-111(C)(1)(a).) Even if ignorant of the applicable professional standards, he is nonetheless culpable of gross negligence in his usurpation of his client's privilege and in his subsequent failure to represent her. We have previously noted that grossly negligent failure to represent a client warrants discipline. (See *Doyle* v. *State Bar* (1976) 15 Cal.3d 973, 978 [126 Cal.Rptr. 801, 544 P.2d 937].)

Petitioner next offers two excuses for "missing the deadline." He asserts that he was "ill and out of the office for a month and a half at the critical time late in 1980 [*sic*], when the statute of limitations ran out." He also attempts to shift some of the blame to a "member of [his] staff," while simultaneously conceding ultimate responsibility for the actions of that staff. Petitioner's attempt to disclaim responsibility deserves little recognition, except to note that the evidence amply indicates that petitioner was personally responsible for Ms. B.'s case. We find the former contention simply unconvincing. Petitioner's reference to his illness is vague and unsubstantiated; we are not informed of the type or extent of his affliction. He offered no evidence that his physical condition incapacitated him, or left him unable to delegate the case to his associate or to advise Ms. B. to retain other counsel. Petitioner's excuses fall far short of persuading us that the State Bar erred in finding that petitioner wilfully failed to represent Ms. B.

In adopting the findings of the State Bar regarding the wilful failure to represent a client, we also note that petitioner does not contest the State Bar's finding that he failed to respond to inquiries made by the California State Automobile Association (CSAA), the insurance carrier involved here. One of petitioner's letters informed CSAA that he represented Ms. B. CSAA's claims adjuster, acting in reliance upon the letter, contacted petitioner, requesting further information. The adjuster also established a $2,300 reserve in anticipation of Ms. B.'s claim. Petitioner, however, failed to respond to the insurer's requests for information. Because petitioner represented Ms. B., the adjuster never contacted her directly, nor of course should he. Thus, as a result of petitioner's conduct, Ms. B. was denied any opportunity to settle with CSAA. This miscon-

duct alone would be sufficient to sustain a finding of wilful failure to represent Ms. B., further justifying the findings and conclusions of the State Bar.

### 2. *Wilful Deception of the Court*

■ Petitioner contends that the evidence was insufficient to support a finding that he wilfully deceived the court. He argues that when he denied representing Ms. B. in the verified answer filed in the malpractice case, he was merely "putting [Ms. B.] to her proof" and challenging inaccurate statements in her complaint.

Any factual inaccuracies in the complaint might have justified petitioner's general denial in his answer, although a denial, while admitting representation, probably would have been more honest and prudent. (See *Williamson* v. *Clapper* (1948) 88 Cal.App.2d 645, 647-648 [199 P.2d 337].) Certainly it would have "put Ms. [B.] to her proof." However, we need not pursue further the propriety of a general denial and whether, standing alone, such a denial would warrant discipline because his argument mischaracterizes the nature of the deceit involved here.

Petitioner also included in his answer an affirmative defense asserting that he had been retained to represent Ms. B. only for her property damage claims. Petitioner made this assertion under penalty of perjury, with knowledge that he had asked Ms. B. for medical bills, written the hospital requesting medical records, and advised the driver of the other vehicle that he represented Ms. B. in her personal injury claim. Petitioner had personal knowledge that Ms. B.'s car was insured; his office also requested information regarding lost wages from her employer. As noted above, the only inference that can fairly be drawn from petitioner's conduct is that he was pursuing a personal injury claim. In light of his conduct and knowledge, petitioner's assertion of his restricted authority amounted to an affirmative misrepresentation to the court, evidently made to avoid liability for his prior negligence. Such a misrepresentation exceeds the bounds of zealous advocacy. It cannot be condoned. The finding of the State Bar Court that petitioner knew the verified answer to be false when he signed it is thus well supported.

■ Petitioner next suggests that his deceit was not serious enough to warrant discipline; he seems to argue that his conduct should be protected as vigorous representation. We reject the argument.

In the past we have recognized that the filing of false or misleading pleadings or documents is ground for discipline. In *Pickering* v. *State Bar* (1944) 24 Cal.2d 141, 144 [148 P.2d 1], we held that "The presentation to a court [in a complaint] of a fact known to be false presumes an intent to secure a determina-

tion based upon it and is a clear violation of [§ 6068]." (See also *Olguin* v. *State Bar* (1980) 28 Cal.3d 195, 199-200 [167 Cal.Rptr. 876, 616 P.2d 858].) As previously noted, the hearing panel's finding that petitioner knew that his answer was false when he signed it is well supported by the evidence. Petitioner is thus presumed to have intended to secure a favorable determination based on his pleading and is likewise culpable of violating section 6068.

Petitioner urges that his misrepresentation does not warrant discipline because it was unlikely to mislead the court or injure Ms. B. This contention lacks merit. ■ Actual deception is not necessary to prove wilful deception of a court; it is sufficient that the attorney knowingly presents a false statement which tends to mislead the court. (*Pickering* v. *State Bar, supra,* 24 Cal.2d at pp. 144-145.) ■ Moreover, petitioner's false statement, if believed, would have had a substantial effect upon Ms. B., whose medical expenses and lost wages were at stake.

We likewise find no validity in his contention that Business and Professions Code section 6068 and Rules of Professional Conduct, rule 7-105 (regarding misrepresentations to the court) apply only to lawyers who are acting in their role as advocates for others. He stresses that in the malpractice proceeding he was a party, not an advocate. Yet, petitioner represented himself in that action, and thus unquestionably must be held to standards applicable to advocates. While he suggests that he was forced to defend himself, he was nonetheless free to retain counsel in the malpractice proceeding, as he has done here.

In summary, petitioner has failed to show that the findings of the State Bar regarding his acts of misrepresentation are unsupported by the evidence.

3. *Discipline*

■ Petitioner's final claim is that the discipline recommended is excessive. Again, we disagree.

■ We have recently held that the State Bar's recommendation as to discipline is entitled to greater weight than that of the hearing panel. (*Garlow* v. *State Bar* (1982) 30 Cal.3d 912, 916 [180 Cal.Rptr. 831, 640 P.2d 1106].) ■ Upon consideration of the misconduct herein, and upon review of petitioner's prior disciplinary record, we find that the State Bar's recommendation is well founded.

The wilful failure to perform legal services for which an attorney has been retained (*Finch* v. *State Bar* (1981) 28 Cal.3d 659, 665 [170 Cal.Rptr. 629, 621

P.2d 253]) and the wilful deceiving of a court (*Pickering* v. *State Bar, supra,* 24 Cal.2d at pp. 144-145) each warrant a separate and independent disciplinary response. Where both offenses are committed in concert, substantial discipline is warranted.

■ We may properly consider an attorney's prior record of discipline in determining the appropriate degree of discipline. (*Hamilton* v. *State Bar* (1979) 23 Cal.3d 868, 879 [153 Cal.Rptr. 602, 591 P.2d 1254].) ■ As noted, in an earlier proceeding, petitioner was disciplined for failure to perform services for which he had been retained, for wilfully misleading a client, and for commingling funds. In a later proceeding, the State Bar Court concluded that petitioner wilfully failed to use reasonable diligence to accomplish the purpose for which he was employed. (Rules Prof. Conduct, rule 6-101.) Petitioner's disciplinary history thus demonstrates an ongoing substantial disregard for his clients, for the rules of professional behavior, as well as a recurring lack of candor. This repetitive misconduct warrants severe discipline. "[W]hen an attorney's disregard of his clients' interests is 'habitual' [citations] or when failure to render services is combined with failure to communicate with a client and with misrepresentation, severe discipline has been imposed. [Citation.]" (*Lester* v. *State Bar* (1976) 17 Cal.3d 547, 551 [131 Cal.Rptr. 225, 551 P.2d 841].)

Because petitioner has not demonstrated that the findings of fact were not supported by the evidence, and in light of petitioner's prior discipline, we readily adopt the recommendations of the State Bar.

It is ordered that Clarence L. Davis, Jr., be suspended from the practice of law for a period of three years, that execution of the order be stayed, that he be placed on probation for three years on condition that he be actually suspended for the first year of that period of probation, and that he comply with the additional conditions recommended by the State Bar Court. This order is effective 30 days after the filing of this opinion.