[L.A. No. 32022. Dec. 16, 1985.]

S. DWAYNE CHASTEEN, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

S. Dwayne Chasteen, in pro. per., and Theodore A. Cohen for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., Ellen A. Pansky and JoAnne Earls Robbins for Respondent.

OPINION

**THE COURT.**[*]—This is a proceeding to review the recommendation of the State Bar that petitioner be suspended from the practice of law for five years, that the suspension be stayed and that he be placed on probation with certain conditions. Among the conditions of probation recommended by the hearing panel was that Chasteen be suspended from the practice of law until restitution was made to one of his former clients. The review department increased the recommended discipline to include a one-month period of actual suspension in addition to the aforementioned period of suspension.[1]

Petitioner sought review in this matter when this court notified him that it was considering imposing more severe discipline than that recommended by the review department. Petitioner urges this court to impose the less severe discipline recommended by the hearing panel, or, in the alternative, the discipline recommended by the review department.[2] Petitioner claims that such discipline is fair and adequate in view of several mitigating factors. He also argues that the one-month minimum suspension is unnecessary to protect the public and maintain the integrity of the profession.

### I.

Petitioner has been a member of the bar since June of 1974 and has continuously engaged in the practice of law. He has a prior record of discipline and is currently on probation for (1) writing 48 checks without sufficient funds between June of 1981 and January of 1982; and (2) depositing

---

[*]Before Bird, C. J., Mosk, J., Broussard, J., Reynoso, J., Grodin, J., Lucas, J., and Lew, J.†

[1]The review department voted ten to two for the one-month minimum suspension. The two referees who opposed that recommendation favored more severe discipline.

[2]Petitioner was represented by counsel for the first time in this case at oral argument. There, counsel conceded that the one-month minimum suspension recommended by the review department was appropriate.

---

†Assigned by the Chairperson of the Judicial Council.

his own funds in his client trust fund account in 1980 and 1981.[3] His conditions of probation do not include a period of actual suspension. However, he is required to seek psychiatric or psychological counseling and participate in the State Bar's program on alcohol abuse.

The present charges arose out of conduct which occurred between 1976 and 1981. Petitioner contested some of these charges before the hearing panel and admitted others. Since petitioner does not contest most of the hearing panel's findings of fact as amended by the review department (see *post,* fn. 6), they are discussed somewhat summarily.

Petitioner was suspended from active membership in the State Bar in November of 1978 for nonpayment of dues. Although the suspension continued in effect until January of 1984,[4] petitioner continued to practice law during this suspension.

In 1975, M. L. Debrow retained petitioner to represent her in an action for legal malpractice. In September of 1975, petitioner filed a complaint on Debrow's behalf in superior court. As a result of petitioner's wilful and knowing failure to serve answers to interrogatories propounded by the defendants, the superior court imposed sanctions on petitioner in August of 1979.

In October of 1980, the defendants filed a motion to dismiss for failure to bring the matter to trial within five years. Although a copy of this motion was served on petitioner, he failed to appear at the scheduled hearing. The superior court then granted defendant's motion and dismissed the case.

During 1980 and early 1981, Debrow repeatedly tried to contact petitioner without success. In the fall of 1980, petitioner informed Debrow that her case would be settled.[5] Debrow discovered in March of 1981 that her case had been dismissed. When she finally contacted petitioner and asked him about this, he apologized for having "let the statute blow" and having "wronged" her. He also told her that he had a drinking problem and that he had lost his wife and his family.

---

[3] The notice to show cause in that proceeding was filed after the hearing panel in this case rendered its recommendation. (See In re S. Dwayne Chasteen, Bar Misc. 4975, order filed Sept. 11, 1985.) The record reveals that neither the hearing panel nor the review department considered that proceeding in determining the recommended discipline.

[4] Shortly after the hearing panel rendered its decision, petitioner paid the outstanding dues and again became eligible to practice law.

[5] The State Bar found that Debrow was told her case *had been* settled in December of 1980. However, Debrow's testimony was that in October or November of 1980 petitioner told her that her case would be settled that December.

Debrow was also the victim of another act of misconduct. In 1976, petitioner received a $7,500 settlement check on Debrow's behalf arising from an insurance claim. Both he and Debrow endorsed it. In October of 1976, petitioner deposited the check in his personal checking account. One month later, petitioner wrote Debrow a check on his account for $5,000. As a result of these actions, petitioner was found to have wilfully commingled and misappropriated his client's trust funds.[6]

Petitioner's fourth act of misconduct involved a former client, J. D. A. Terry. In 1976, Terry hired petitioner to file a bankruptcy petition on her behalf and paid him a $275 retainer. Petitioner and Terry agreed to postpone the filing of the petition until a personal injury action in which Terry was a party had been settled. After the settlement, Terry attempted to contact petitioner by telephone, but petitioner rarely returned her calls. On one occasion, he told her a court date had been set when in fact it had not. Terry eventually retained another attorney to represent her in the bankruptcy matter.

The final acts of misconduct concern petitioner's failure to diligently prosecute R. S. MacNaughton's personal injury case. After petitioner filed a complaint on MacNaughton's behalf, MacNaughton provided petitioner with answers to interrogatories propounded by defendant. Petitioner wilfully failed to transmit or file the answers. He failed to inform MacNaughton of this omission and instead told him that the case was proceeding properly. In 1980, MacNaughton continued to try to contact petitioner, who had stopped returning his phone calls. In October of 1980, the superior court ordered MacNaughton to pay $300 in sanctions for failing to answer the interrogatories. MacNaughton did not learn about this sanction until four months later.

In December of 1980, MacNaughton retained other counsel to pursue his case. For two months counsel attempted to contact petitioner to obtain the case file, but his phone calls went unreturned. The new attorney finally went to petitioner's office in search of the file. Petitioner told him that he would send it to him immediately. The file was never sent and petitioner continued to ignore counsel's phone calls.

In addition to adopting these findings, the review department made an additional finding that petitioner "has been and presently is addicted to excessive use of alcohol."

---

[6]The hearing panel and review department agreed on this finding. The hearing panel found that petitioner did not intend to convert these funds to his own use but the review department deleted that conclusion. The deletion may explain the review department's increase in the recommended discipline.

Following a six-day partially contested hearing on the charges, the hearing panel found that petitioner wilfully and knowingly engaged in the unauthorized practice of law without active membership in the State Bar (Bus. & Prof. Code, §§ 6125, 6126) and acted in contempt of court (Bus. & Prof. Code, § 6127). In addition, the hearing panel found that petitioner wilfully breached his duty to keep client funds and property separate (Rules Prof. Conduct, rule 8-101) and to act competently (Rules Prof. Conduct, rule 6-101).

Petitioner presented the following evidence in mitigation. In February of 1980, petitioner became separated from his wife of ten years and his two small children. For a period of six months to a year prior to that event, he "was not taking care of business" or "doing what [he] should." Petitioner was suffering from "severe depression" due to the breakup of his marriage and was seeing a psychologist for his personal problems, including a drinking problem.

In October of 1983, petitioner admitted himself to a hospital alcohol rehabilitation unit. He was discharged three weeks later. At the final hearing before the State Bar panel, petitioner testified that he had finally admitted to himself that he was an alcoholic and that he was participating in a six-month program of followup care from his hospital rehabilitation program and was attending Alcoholics Anonymous at least twice a week. Petitioner also stated that he had remained sober for 70 days, the longest period of sobriety he had experienced in the last 25 years. He further stated that he had been under stress due to his financial situation.

In its findings, the hearing panel explicitly considered petitioner's addiction to alcohol and his contention that any period of actual suspension could result in the loss of his job. The review department did not discuss mitigating factors in its statement of recommended discipline.

## II.

█ " 'The purpose of a disciplinary proceeding is not punitive but to inquire into the fitness of the attorney to continue in that capacity for the protection of the public, the courts, and the legal profession.' " (*In re Cohen* (1974) 11 Cal.3d 935, 944 [114 Cal.Rptr. 611, 523 P.2d 651], quoting *Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 748 [111 Cal.Rptr. 905, 518 P.2d 337; see also *Jackson* v. *State Bar* (1979) 23 Cal.3d 509, 514 [153 Cal.Rptr. 24, 591 P.2d 47]; *Codiga* v. *State Bar* (1978) 20 Cal.3d 788, 796 [144 Cal.Rptr. 404, 575 P.2d 1186].) Thus, the discipline in each case must be determined on the particular facts of the case. (*Olguin* v. *State Bar* (1980) 28 Cal.3d 195, 200 [167 Cal.Rptr. 876, 616 P.2d 858]; *Kelson* v. *State Bar* (1976) 17 Cal.3d 1, 6 [130 Cal.Rptr. 29, 549 P.2d 861].)

■ Petitioner's misconduct involved failing to act competently and to perform his duties as an attorney, commingling and misappropriating funds, and the unauthorized practice of law while under suspension by the State Bar. These violations are serious. They involve breaches of fiduciary duty (see *Finch* v. *State Bar* (1981) 28 Cal.3d 659, 665 [170 Cal.Rptr. 629, 621 P.2d 253]; see also *Davis* v. *State Bar* (1983) 33 Cal.3d 231, 240-241 [188 Cal.Rptr. 441, 655 P.2d 1276]) and, as to the misappropriation, an act of moral turpitude (see *Bate* v. *State Bar* (1983) 34 Cal.3d 920, 923 [196 Cal.Rptr. 209, 671 P.2d 360]).

■ Misappropriation is a "grievous breach of professional ethics and morality [which] is certain to endanger the confidence of the public in the legal profession." (*Bradpiece* v. *State Bar, supra,* 10 Cal.3d at p. 746.) Misappropriation alone constitutes grounds for disbarment unless there is strong evidence of mitigation. (*Id.*, at p. 747; see also *Alberton* v. *State Bar* (1984) 37 Cal.3d 1, 15 [206 Cal.Rptr. 373, 686 P.2d 1177].) However, " 'there is no conformity as to punishment ascertainable from the [misappropriation] cases. Each case must be decided on its own facts.' " (*Bate, supra,* 34 Cal.3d at p. 924, quoting *Yapp* v. *State Bar* (1965) 62 Cal.2d 809, 819 [44 Cal.Rptr. 593, 402 P.2d 361].)

■ " 'Although the State Bar's recommendation as to discipline is entitled to great weight . . . we exercise our independent judgment in determining the appropriate punishment for professional misconduct . . . .' " (*Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 132 [202 Cal.Rptr. 349, 680 P.2d 82], quoting *Gordon* v. *State Bar* (1982) 31 Cal.3d 748, 757 [183 Cal.Rptr. 861, 647 P.2d 137], citations omitted.) " 'Our principal concern is always the protection of the public, the preservation of confidence in the legal profession, and the maintenance of the highest possible professional standard for attorneys.' " (*Chefsky, supra,* 36 Cal.3d at p. 132, quoting *Jackson* v. *State Bar, supra,* 23 Cal.3d at p. 514.)

This court has occasionally imposed more severe penalties than recommended by the review department. (See *Gordon* v. *State Bar, supra,* 31 Cal.3d 748; *Olguin* v. *State Bar, supra,* 28 Cal.3d 195; *Cain* v. *State Bar* (1979) 25 Cal.3d 956 [160 Cal.Rptr. 362, 603 P.2d 464]; *Martin* v. *State Bar* (1978) 20 Cal.3d 717 [144 Cal.Rptr. 214, 575 P.2d 757].) In this case, an increase in the recommended discipline is appropriate.

Here, petitioner failed to perform services for which he had been retained and he repeatedly refused to respond to inquiries from clients or to communicate with them. He misled clients about the progress of their cases and failed to return fees to one client after being so instructed. In addition, he continued to practice law for over a year when he knew he was no longer a member in good standing of the State Bar.

The acts of misconduct involved here started in 1976, a short time after petitioner became a member of the bar. They continued into 1982. The misconduct was neither isolated nor minor and certainly justifies imposing a longer period of suspension than the one month recommended by the review department.

A two-month period of such suspension adequately takes into account the seriousness of the misconduct and the evidence presented in mitigation. Petitioner is now beginning to come to terms with his alcoholism and is participating in an ongoing treatment program. It is encouraging that these steps may eventually lead to rehabilitation. In view of the misconduct, a period of two months of actual suspension is appropriate.

It is also appropriate to require that petitioner remain in supervised employment during the probationary period. The bulk of his misconduct appears to be closely related to his alcohol abuse. Given the long history of such abuse and the effect it has had on his former clients, close supervision of petitioner's employment is necessary for protection of the public.[7]

Accordingly, this court orders that (1) petitioner be suspended from the practice of law for five years; (2) execution of this order be stayed; and (3) petitioner be placed on probation for a five-year period, to be served concurrently with the probation period imposed in Bar Misc. 4975. Probation includes the following conditions: (1) that petitioner be suspended from the practice of law for two months, such suspension to begin on the date this order becomes final, (2) that the suspension be lifted after two months upon proof to the office of the State Bar Court that petitioner has made restitution to J. D. A. Terry in the amount of $275 plus interest at the rate of 10 percent per annum calculated from January 1, 1977, to the date of payment, and (3) that petitioner remain in supervised employment during the probationary period.

**LUCAS, J.,** Concurring and Dissenting.—I agree petitioner should be disciplined. I respectfully dissent, however, to that portion of the majority opinion imposing an actual suspension of only 60 days. Petitioner was admitted to the bar in 1974, and shortly thereafter, in 1976, began what was to be a pattern of professional misconduct. After cataloging these numerous instances, and acknowledging these incidents were "neither isolated nor minor" (*ante,* p. 593), the majority finds a two-month period of actual suspension to be adequate discipline. I disagree.

Petitioner's apparent progress in dealing with his alcoholism is encouraging and is a proper factor for this court to consider in determining the

---

[7]Continued employment in petitioner's current position at Southern Pacific Railroad will satisfy this requirement of probation.

discipline to be imposed. (*Tenner* v. *State Bar* (1980) 28 Cal.3d 202, 207 [168 Cal.Rptr. 333, 617 P.2d 486].) Nonetheless, our duty is to assure the protection of the public, the bench and the bar in light of *all* relevant circumstances. (*Doyle* v. *State Bar* (1982) 32 Cal.3d 12, 23 [184 Cal.Rptr. 720, 648 P.2d 942].) Petitioner's acts of misconduct occurred over a long period of time and involved several separate clients and several separate misdeeds. Though petitioner has participated in followup care from his hospital rehabilitation program, and is attending Alcoholics Anonymous meetings, he has yet to demonstrate a sustained period of successful rehabilitative effort. (Compare *Tenner, supra,* at p. 207.) At the time petitioner testified before the State Bar panel, the 70-day period of sobriety he had then completed was the longest he had sustained in the last 25 years. In contrast, in *Tenner,* the bar had before it evidence of almost three years of successful treatment efforts for the attorney's alcohol problem. (*Id.* at pp. 205-206.)

An attorney's recognition of his alcohol problem alone is not sufficient assurance that future misconduct will not occur. (See *Tarver* v. *State Bar* (1984) 37 Cal.3d 122, 134 [207 Cal.Rptr. 302, 688 P.2d 911] [disbarment imposed despite petitioner's alcoholism offered as a factor in mitigation].) Petitioner admittedly has also, unlike the attorney in *Tarver,* acknowledged responsibility, and expressed remorse for his misconduct. Nonetheless, given the significant degree of misconduct, and in view of the fact that the usual discipline for this kind of breach is disbarment (*Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 747 [111 Cal.Rptr. 905, 518 P.2d 337] ["The usual discipline imposed for such a breach (misappropriation) is disbarment, in the absence of strong mitigating circumstances"]), I believe that a longer period of actual suspension than the 60 days imposed by the majority, followed by a closely supervised probation period, will emphasize to petitioner the seriousness of his misdeeds, and afford the most protection to the interests at issue. (See *Finch* v. *State Bar* (1981) 28 Cal.3d 659 [170 Cal.Rptr. 629, 621 P.2d 253] [six months' actual suspension]; *Demain* v. *State Bar* (1970) 3 Cal.3d 381 [90 Cal.Rptr. 420, 475 P.2d 652] [same].)

Reynoso, J., and Lew, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.