Filed 8/25/15  Stapke & Harris v. Raskov CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| STAPKE & HARRIS, LLP, | B256473 |
| Cross-complainant and Respondent, | (Los Angeles County Super. Ct. No. BC433843) |
| v. | |
| DANIEL RASKOV, | |
| Cross-defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Affirmed.

Daniel Raskov, in pro. per., for Cross-defendant and Appellant.

Sandra J. Gamboa, for Cross-complainant and Respondent.

_____

Daniel Raskov appeals from a postjudgment order awarding $137,025 in attorney fees to the law firm of Stapke & Harris after the firm prevailed on its cross-complaint against Raskov for breach of contract. Without challenging the amount of attorney fees awarded, Raskov contends Stapke & Harris had represented itself in the action and thus was not entitled to recover attorney fees pursuant to *Trope v. Katz* (1995) 11 Cal.4th 274 (*Trope*) (a self-represented attorney claimant may not recover attorney fees). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Initial Fee Dispute and Arbitration*

In 2005 Raskov and his sister Michele Aronson (the Raskov parties) retained Stapke & Harris to represent them in a probate matter. After judgment was entered in that action in 2006, a fee dispute arose between Stapke & Harris and the Raskov parties. In 2008 Stapke & Harris filed a nonbinding fee arbitration claim with the Los Angeles County Bar Association in accordance with the Mandatory Fee Arbitration Act (Bus. & Prof. Code, § 6200 et seq.). Following a hearing, in February 2010 the arbitrators awarded Stapke & Harris $39,285.07 in unpaid legal fees plus interest.

2. *The Lawsuit by Stapke & Harris for Fees Incurred in the Probate Action*

In March 2010 Aronson requested a trial de novo of the fee dispute (Bus. & Prof. Code, § 6204) and filed a complaint in the Los Angeles County Superior Court; Stapke & Harris filed a cross-complaint against the Raskov parties to recover its fees incurred in the probate action. Following a trial solely on the cross-complaint (Aronson's claims were dismissed prior to trial), a jury awarded Stapke & Harris $39,523.87. The trial court awarded Stapke & Harris an additional $32,341,17 in prejudgment interest and entered judgment in favor of Stapke & Harris for $71,865.04. This court affirmed the judgment earlier this year. (*Stapke & Harris, LLP v. Raskov* (Apr. 21, 2015, B252176) [nonpub. opn.] [as modified May 12, 2015].)[1]

---

[1] Aronson settled with Stapke & Harris and was not a party to the appeal.

3. *Stapke & Harris's Motion for Attorney Fees*

Following trial and entry of judgment in this action, Stapke & Harris sought $183,463 in attorney fees as the prevailing party in the action. (See Bus. & Prof. Code, § 6204, subd. (d) [trial court has discretion to award reasonable attorney fees and costs to the prevailing party in trial de novo following arbitration award].) Stapke & Harris's motion for fees was supported by declarations from Mark Stapke, a former principal at Stapke & Harris and the billing partner at Michelman & Robinson, LLP, the firm that represented Stapke & Harris in the instant action through April 2013, and from Sandra Gamboa, who began representing Stapke & Harris in May 2013 and formally substituted in as its attorney of record in June 2013. Those declarations included itemized bills from both Michelman & Robinson and from Gamboa. Michelman & Robinson sought $146,438 for 401.2 hours billed by its partner, Andrew Kim. Gamboa sought $37,025 for 148.1 hours she had billed in the action. Mark Stapke expressly stated Stapke & Harris's request for attorney fees was limited to fees incurred by Michelman & Robinson and Gamboa relating to their representation of Stapke & Harris in the trial de novo; it was not seeking fees relating to Mark Stapke's representation of the firm during the arbitration or while he was a partner at Michelman & Robinson.

Raskov opposed the motion for attorney fees. In addition to resurrecting his argument that Stapke & Harris lacked standing to pursue its lawsuit,[2] Raskov asserted Stapke & Harris had been acquired by Michelman & Robinson in 2007. Thus, he argued, Michelman & Robinson, a successor in interest to Stapke & Harris, had effectively represented itself in this action and was not entitled to its attorney fees pursuant to *Trope v. Katz, supra,* 11 Cal.4th 274.

_____

[2]    Raskov had argued in a posttrial motion and in a prior appeal that Stapke & Harris's January 19, 2007 assignment of all its "assets, accounts receivable, deposit accounts, credit card accounts, merchant accounts, judgment liens, real property, furniture, personal belongings . . . and any other property . . . now owned or hereafter acquired" to its secured creditor, THC, Inc., deprived it of standing to pursue its cross-complaint. The trial court rejected that argument, a ruling we affirmed on appeal. (See *Stapke & Harris, supra,* B252176.)

3

At the January 31, 2014 hearing on the motion for attorney fees, the court stated that, while it intended to award Gamboa her fees for representing Stapke & Harris during trial, it required "further information as to work performed by other attorneys." According to both Raskov and Stapke & Harris, the court requested the parties to provide more information on the "relationship between Michelman & Robinson and Stapke & Harris and [whether] that relationship precluded an award of Michelman & Robinson's fees pursuant to *Trope*."[3] The court set a briefing schedule and continued the hearing to March 10, 2014.

In its supplemental brief in support of its attorney fee motion, Stapke & Harris insisted Michelman & Robinson and Stapke & Harris were separate entities. In a supplemental declaration Mark Stapke explained in December 2006 he negotiated an agreement with the senior partner at Michelman & Robinson to join that firm as a partner. Under the terms of the agreement he was to receive a minimum guaranteed draw and other partnership benefits. Michelman & Robinson "specifically declined to purchase S&H [(Stapke & Harris)] as a business and merge it into M&R [(Michelman & Robinson)]. . . . M&R received no assets of S&H, other than when any law firm assumes a group of clients from another firm when the clients wish to change firms and go with a partner representing them to the new firm. The only things that went to M&R from S&H were the client files and a server. . . . [¶] . . . M&R assumed no responsibility for payment of liabilities of S&H at any time. S&H was paid nothing by M&R as part of this transaction; the only benefit was to me, as I received an interest in M&R and other benefits such as a partner's draw in exchange for agreeing to practice law there. In addition, M&R was not entitled to amounts collected on S&H accounts receivable. . . . [¶] . . . [¶] . . . No acquisition agreement was ever created or executed by or between

---

3     The minute order states only the court sought more information "as to work performed by other attorneys," and a transcript of proceedings was not included in the record on appeal. However, in its supplemental brief Stapke & Harris acknowledged the purpose of the additional briefing was to provide more information as to the relationship between Stapke & Harris and Michelman & Robinson.

either M&R or S&H, and the firms remained separate after January 1, 2007.  This even went so far as to result in S&H's network server being set up on a completely separate network from the M&R network . . . at the insistence of the partners of M&R, who wanted to maintain the separateness of the two firms and their respective computer networks."

Jennifer Harris, also a principal at Stapke & Harris, provided a substantially similar declaration, asserting Michelman & Robinson had not acquired Stapke & Harris. Gamboa also provided a declaration in support of the motion.  Among other things, she stated that at the hearing on the motion she would "have with [her] a copy of the retainer agreement between" Stapke & Harris and Michelman & Robinson, which she declined to attach to her declaration "because of its privileged nature."

In his supplemental opposition Raskov attacked Gamboa's refusal to attach the retainer agreement as "sandbagging tactics," asserting the court had continued the hearing for the express purpose of allowing Stapke & Harris to provide a copy of the retainer agreement to prove the existence of an attorney-client relationship between Stapke & Harris and Michelman & Robinson.[4]  He also emphasized that Mark Stapke, in his testimony at trial, had stated his firm had been "acquired by Michelman & Robinson." Mark Stapke, however, stated in his supplemental declaration that he had used the term "acquired" loosely in his trial testimony to refer to the fact that all of his clients at his construction practice at Stapke & Harris had moved with him to Michelman & Robinson.

Raskov did not provide a transcript of proceedings as part of the record on appeal; and it is not clear from the record on appeal whether a retainer agreement between Stapke

---

[4]     The January 31, 2014 minute order does not state this was the purpose of the continuance; and Raskov has not provided a transcript of proceedings that would permit this court to confirm his account.  Raskov elected to proceed on appeal without a reporter's transcript, as was his right.  (Cal. Rules of Court, rule 8.130.)  In his notice designating the record on appeal, Raskov acknowledged that without a record of the oral proceedings, the Court of Appeal "will not be able to consider what was said during those proceedings in determining whether an error was made in the superior court proceedings."

5

& Harris and Michelman & Robinson was ever produced at the hearing or considered by the court. According to the court's March 10, 2014 minute order, the court awarded Stapke & Harris $137,025 in attorney fees ($45,438 less than what it had sought) and $19,780.75 in costs.

## DISCUSSION

### 1. *Standard of Review*

Although an order granting or denying an award of attorney fees is ordinarily reviewed for abuse of discretion (*Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1319), when, as here, the issue involves a litigant's legal entitlement to fees under a particular statute or case authority, the question is one of law that we review de novo. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175; *Ellis Law Group, LLP v. Nevada City Sugar Loaf Properties, LLC* (2014) 230 Cal.App.4th 244, 253; *Carpenter & Zuckerman LLP v. Cohen* (2011) 195 Cal.App.4th 373, 378.) In addition, when the ruling on a party's entitlement to fees requires resolution of a disputed factual issue, we review the trial court's finding for substantial evidence, resolving all conflicts in favor of the judgment and indulging in all legitimate and reasonable inferences to uphold the trial court's finding. (*Carpenter,* at p. 378, *Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1290.)

### 2. *Governing Law*

In *Trope, supra,* 11 Cal.4th 274, the Supreme Court held a law firm that represented itself in litigation against its former client for breach of contract was not entitled to attorney fees: "[W]e hold that an attorney who chooses to litigate in propria persona and therefore does not pay or become liable to pay consideration in exchange for legal representation cannot recover 'reasonable attorney's fees' under [Civil Code] section 1717 as compensation for the time and effort he expends on his own behalf or for the professional business opportunities he forgoes as a result of his decision." (*Id.* at p. 292.) When the litigant law firm is represented by one of its own attorneys, it is effectively self-represented and not entitled to fees. (*Ibid.; Soni v. Wellmike Enterprise Co. Ltd.* (2014) 224 Cal.App.4th 1477, 1488 [attorney litigant who prevailed on his

6

breach of contract claim against former client denied contractual attorney fees pursuant to *Trope;* substantial evidence supported finding that attorney was represented by associates of his own firm in action that was related to firm's interests, not attorney's personal interests]; *Carpenter & Zuckerman LLP v. Cohen*, *supra*, 195 Cal.App.4th at p. 385 [law firm litigant represented by its associate attorney was prohibited under *Trope* from recovering attorney fees under Code of Civil Procedure section 425.16 for work performed by one of its associate attorneys in representing firm]; *Witte v. Kaufman* (2006) 141 Cal.App.4th 1201, 1207 [same].)[5]

3. *Substantial Evidence Supports the Court's Finding that Michelman & Robinson and Stapke & Harris Were Separate Entities*

Raskov contends there is no evidence to support the trial court's finding that Michelman & Robinson and Stapke & Harris were separate entities with an attorney-client relationship. He highlights the absence of any evidence that the two firms had a retainer agreement or that Stapke & Harris had actually paid any of the fees identified on Michelman & Robinson's invoices for Kim's work on the case. He also observes Michelman & Robinson's invoices were addressed to Stapke & Harris at Michelman & Robinson's address, suggesting the two firms were one and the same.

At the threshold Raskov's emphasis on the lack of evidence of a retainer agreement between the two firms is misplaced. Although Business and Professions Code section 6148 requires contracts for legal services, with limited exception, to be in writing, the failure to comply with that requirement simply "renders the agreement voidable at the option of the client . . . ." (Bus. & Prof. Code, § 6148, subd. (c).) The absence of a

---

[5] The rule does not apply to an attorney who is represented by other members of his or her firm in litigation involving a personal matter unrelated to the firm. In that case the attorney is not self-represented. (See *Gilbert v. Master Washer & Stamping Co.* (2001) 87 Cal.App.4th 212, 222-223 [attorney who prevailed on his personal claim for breach of contract against his landlord could recover attorney fees incurred by other members of his firm in representing him; the other members of the law firm are not representing their own personal interests or those of the law firm, but the separate and distinct interests of the defendant]; *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 96 [same].)

7

written retainer agreement, although one of the factors in determining whether an attorney-client relationship has been created, does not mean the relationship itself does not exist or permit a stranger to the agreement to dispute a relationship otherwise recognized between the parties. (See generally *Davis v. State Bar* (1983) 33 Cal.3d 231, 237 ["[n]o formal arrangements are necessary to establish an attorney-client relationship [citation], especially where . . . the existence of the relationship is demonstrated and reinforced by the attorney's own conduct"]; *Streit v. Covington & Crowe* (2000) 82 Cal.App.4th 441, 444 ["[a]lthough the [attorney-client] relationship usually arises from an express contract between the attorney and the client, it may also arise by implication"].) Here, it is clear from the pleadings and the conduct of Michelman & Robinson and Stapke & Harris that the former represented the latter in this lawsuit.

The question that occupied the trial court was not whether Michelman & Robinson represented Stapke & Harris, but whether Michelman & Robinson was Stapke & Harris's successor in interest and thus effectively represented itself at trial. On this point Mark Stapke and Jennifer Harris provided declarations attesting that the two firms were separate entities and retained separate identities. Although Stapke & Harris had ceased operations as a law partnership in 2007, the firm itself, they testified, was not merged into Michelman & Robinson nor acquired by it, a fact further reinforced by Stapke & Harris's January 2007 assignment of all of its assets, including accounts receivable, to a third party creditor, not to Michelman & Robinson.

Raskov's reliance on the address to which the invoices were sent and the absence of evidence Stapke & Harris actually paid the fees is similarly unpersuasive. Both are offered by him as evidence that the two firms were one and the same. The trial court reached a different conclusion based on other evidence, including Mark Stapke's and Jennifer Harris's declarations. Our task is not to resolve conflicting inferences, but to determine whether there is substantial evidence to support the court's finding. As discussed, the testimony of Mark Stapke and Jennifer Harris, as well as evidence of the 2007 asset assignment to a third party creditor, provides substantial evidence to support the court's finding that Michelman & Robinson was not representing itself in the action.

8

Finally, Raskov's appeal from the postjudgment order also purports to challenge Stapke & Harris's standing.  We addressed and rejected that argument in the appeal from the underlying judgment.  (See *Stapke & Harris, supra,* B252176.)  Our holding in that appeal is dispositive as law of the case.  (*George Arakelian Farms, Inc. v. Agricultural Labor Relations Bd.* (1989) 49 Cal.3d 1279, 1291; *Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 301.)

## DISPOSITION

The postjudgment order is affirmed.  Stapke & Harris is to recover its costs on appeal.


PERLUSS, P. J.


We concur:



ZELON, J.



SEGAL, J.