[Crim. No. 11956. Third Dist. May 2, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID R. JACKSON, Defendant and Appellant.

COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Harvey Zall, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eddie T. Keller and W. Scott Thorpe, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

PUGLIA, P. J.—A jury convicted defendant of assault with intent to commit rape (Pen. Code, § 220), finding contemporaneous use of a deadly

weapon (Pen. Code, § 12022, subd. (b)). Before sentencing, defendant discharged court-appointed trial counsel. Through retained counsel he moved for new trial on grounds of ineffective assistance of counsel and prosecutorial misconduct. The crux of defendant's complaint was the existence of an ongoing "dating" relationship between trial counsel and the prosecutor. According to defendant's declaration in support of his motion for new trial, this relationship had not been disclosed to him. The record does not reveal when or in what manner the relationship ultimately became known to defendant. It is inferable, however, that defendant had no knowledge of it until after the conclusion of the trial.

Following an evidentiary hearing, the court denied the new trial motion. Imposition of sentence followed. On appeal, defendant renews his claims of ineffective assistance of counsel and prosecutorial misconduct. We shall reverse on the first ground.

### I

The evidence at the new trial hearing establishes that defense counsel and the prosecutor began "dating" about eight months before defendant was charged. They continued to meet on "a regular basis" for movie and dinner dates, etc., throughout the duration of the criminal proceedings against defendant. During that time they appeared as counsel in directly adverse roles representing defendant and the People respectively at the preliminary examination, at pretrial settlement conferences, and at trial. They were never married nor engaged to each other nor did they ever live together.

Defense counsel and the prosecutor did not inform defendant or the court of their relationship. Defense counsel never divulged any confidential defense information to the prosecution. He testified he believed the situation created no possibility of conflict of interest and therefore did not require disclosure.

### II

 "It is settled that an indigent charged with committing a criminal offense is entitled to legal assistance unimpaired by the influence of conflicting interests." (*People* v. *Rhodes* (1974) 12 Cal.3d 180, 183 [115 Cal.Rptr. 235, 524 P.2d 363].) As guaranteed by section 15 of article I of the California Constitution, the right to effective assistance of counsel ". . . means more than mere competence. Lawyering may be deficient when conflict of interest deprives the client of undivided loyalty and effort." (*Maxwell* v. *Superior Court* (1982) 30 Cal.3d 606, 612 [180 Cal.Rptr. 177, 639 P.2d 248, 18 A.L.R.4th 333].) Under the California standard, ap-

pellate courts may not " ' "indulge in nice calculations as to the amount of [resulting] prejudice" ' " when a conviction is attacked on the ground that an appointed lawyer was influenced by conflict of interest. (*Ibid.*) "[E]ven a potential conflict may require reversal if the record supports 'an informed speculation' that appellant's right to effective representation was prejudicially affected." (*People* v. *Mroczko* (1983) 35 Cal.3d 86, 105 [197 Cal.Rptr. 52, 672 P.2d 835]; *Maxwell* v. *Superior Court, supra,* at pp. 612-613; see also *People* v. *Chacon* (1968) 69 Cal.2d 765, 776-777, and fn. 3 [73 Cal.Rptr. 10, 447 P.2d 106, 34 A.L.R.3d 454].) "Proof of an 'actual conflict' is not required." (*Mroczko,* at p. 105; cf. federal standard in *Cuyler* v. *Sullivan* (1980) 446 U.S. 335, 346-350 [64 L.Ed.2d 333, 345-347, 100 S.Ct. 1708].)

In *People* v. *Rhodes, supra,* defense counsel was faced with potential conflicting interests. Announcing a judicially declared rule of criminal procedure, the court held that a city attorney with prosecutorial responsibilities should not accept an appointment to defend persons accused of crime. (12 Cal.3d at pp. 186-187.) Even in the absence of a direct conflict with the city attorney's official duties, "there inevitably will arise a struggle between, on the one hand, counsel's obligation to represent his client to the best of his ability and, on the other hand, a public prosecutor's natural inclination not to anger the very individuals whose assistance he relies upon in carrying out his prosecutorial responsibilities." (*Id.,* at pp. 183-184.) Counsel might be tempted to temper vigorous advocacy where, for example, law enforcement officers with whom counsel has "close working relationships" are called as witnesses. (*Id.,* at p. 184.)

*Rhodes* stresses that "It is essential that the public have absolute confidence in the integrity and impartiality of our system of criminal justice. This requires that public officials not only in fact properly discharge their responsibilities but also that such officials avoid, as much as is possible, the *appearance* of impropriety." (Italics in original; fn. omitted; *Rhodes,* at p. 185; see also *People* v. *Barboza* (1981) 29 Cal.3d 375 [173 Cal.Rptr. 458, 627 P.2d 188]; *Love* v. *Superior Court* (1980) 111 Cal.App.3d 367, 372, 374 [168 Cal.Rptr. 577].)

Applying these principles to the novel circumstances here, we conclude that appointed counsel's failure to inform defendant of his relationship with the prosecutor requires reversal. As distinct from parties to casual social contacts (see *Cohn* v. *Rosenfeld* (9th Cir. 1984) 733 F.2d 625, 631), those who are involved in a sustained dating relationship over a period of months are normally perceived, if not in fact, as sharing a strong emotional or romantic bond. (Cf. Comment, *Ethical Concerns of Lawyers Who Are Related by Kinship or Marriage* (1981) 60 Ore.L.Rev. 399, 400.) Such an

apparently close relationship between counsel directly opposing each other in a criminal prosecution naturally and reasonably gives rise to speculation that the professional judgment of counsel as well as the zealous representation to which an accused is entitled has been compromised. (See Comment, *Developments—Conflicts of Interest* (1981) 94 Harv.L.Rev. 1244, 1291, fn. 38.) No matter how well intentioned defense counsel is in carrying out his responsibilities to the accused, he may be subject to subtle influences manifested, for example, in a reluctance to engage in abrasive confrontation with opposing counsel during settlement negotiations and trial advocacy. (See *Rhodes, supra,* 12 Cal.3d at p. 184.)

A criminal defendant's "right to decide for himself who best can conduct the case must be respected wherever feasible." (*Maxwell* v. *Superior Court, supra,* 30 Cal.3d at p. 615; see also *People* v. *Crovedi* (1966) 65 Cal.2d 199, 208 [53 Cal.Rptr. 284, 417 P.2d 868].) Accordingly, counsel involved in a potential conflict situation such as that disclosed by this record may not proceed with the defense without first explaining fully to the accused the nature of his relationship with opposing counsel and affording the accused the opportunity, if he so desires, to secure counsel unencumbered by potential divided loyalties.[1]

 Given the nature of the relationship shown here, the absence of disclosure inevitably fuels informed speculation as to the existence of a disabling conflict. Defendant is then left with no recourse but to impugn the loyalty and adequacy of his appointed counsel. (*Rhodes, supra,* at p. 183.) Since the situation created by counsel's lack of disclosure defies its quantification, actual prejudice need not be shown by defendant as a condition to relief. A potential if not an actual conflict has been demonstrated and thus the appearance, at least, of impropriety. In these circumstances, we are foreclosed from " " "indulg[ing] in nice calculations as to the amount of [resulting] prejudice." " " (*Maxwell* v. *Superior Court, supra,* 30 Cal.3d at p. 612.)[2]

---

[1]Rule 5-102(A) of the State Bar Rules of Professional Conduct requires an attorney to disclose his "relation, if any, with the adverse party" before accepting professional employment. Rule 5-102(A) also expressly requires the client's written consent as well as disclosure. (See *People* ex rel. *Deukmejian* v. *Brown* (1981) 29 Cal.3d 150, 155 [172 Cal.Rptr. 478, 624 P.2d 1206].) We express no view on whether a dating relationship is covered by this ethics rule. (But see *Codiga* v. *State Bar* (1978) 20 Cal.3d 788, 792 [144 Cal.Rptr. 404, 575 P.2d 1186], construing the identical language of former State Bar rule 6 as applying to an in-law.)

See also Cross, *Ethical Issues Facing Lawyer-Spouses and Their Employers* (1981) 34 Vanderbilt L.Rev. 1435; Comment, *Ethical Concerns of Lawyers Who Are Related by Kinship or Marriage, supra,* 60 Ore.L.Rev. 399; Note, *Legal Ethics—Representation of Differing Interests by Husband and Wife: Appearance of Impropriety and Unavoidable Conflicts of Interest?* (1975) 52 Denver L.J. 735.

[2]The *Maxwell* and *Mroczko* decisions indicate that court-supervised consent may also be necessary where potential conflicts of interest threaten to impinge on an accused's right to effective counsel.

The judgment is reversed.

Evans, J., and Carr, J., concurred.