Joseph Angelo GALLO, Petitioner,

v.

P.L. KERNAN, Warden, California State Prison–Solano, Respondent.

No. C–94–20603 RPA.

United States District Court, N.D. California.

June 4, 1996.

Richard Keys, Redwood City, CA, George L. Schraer, San Diego, CA, for plaintiff.

Bruce Ortega, Ronald Niver, California State Attorney General's Office, San Francisco, CA, for defendant.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

AGUILAR, District Judge.

### I. INTRODUCTION

Petitioner Joseph Gallo, an inmate at Solano State Prison, filed this Petition for Habeas Corpus pursuant to 28 U.S.C. § 2254. Gallo, through counsel, alleges that he is unlawfully confined in violation of the Sixth and Fourteenth Amendments. Specifically, Gallo alleges prosecutorial misconduct and the denial of effective assistance of counsel.

### II. BACKGROUND

Gallo was convicted by a Santa Clara County jury on two counts of sodomy, in violation of Cal.Penal Code § 286(c), and one count of oral copulation, in violation of Cal.Penal Code § 288a(c). The trial court sentenced him to 28 years in prison. Gallo was also convicted of nineteen other criminal counts, including assault, extortion, false imprisonment, and dissuading a witness. The trial court sentenced him to an additional 27 years in prison for these crimes. In the present petition, Gallo challenges only his convictions for the three sex offenses. These offenses were perpetrated against Gallo's then wife, Valerie Wright Gallo ("Wright").

Wright married Gallo in October, 1982. Over the next five months, Gallo beat Wright on eight separate occasions, sometimes with his fists, at other times with a phone receiver or a baseball bat. As a result, Wright was hospitalized three times with severe head injuries, including a skull fracture, internal bleeding, acute swelling of the brain, blood clots on the brain, and brain hemorrhaging. At trial, a prosecution expert testified that the repetitive beatings had adversely affected Wright's memory.

Following her third hospitalization, which lasted almost three weeks, Wright left Gallo. She filed a complaint with the Redwood City Police Department. Initially, Wright reported the battering and a single sodomy, which she stated had taken place in a Redwood City hospital. In a subsequent written statement she did not mention the oral copulation. However, at the preliminary hearing Wright testified to two forced sodomies and one oral copulation, all occurring at her San Jose home. She denied she was sodomized in the hospital. At a subsequent deposition, Wright mentioned two sodomies and no oral copulation.

At trial, Wright testified that the three sexual assaults occurred at her house, sometime in between her second and third hospitalization. Wright's testimony was the sole evidence presented on the three sex offenses. Gallo's counsel did not attempt to impeach Wright with her prior inconsistent statements. Gallo was convicted on all charges pertaining to Wright.

In the course of preparing a petition for a writ of habeas corpus, Gallo's current wife, Cheryl, went to San Jose to listen to three tapes of a recorded conversation between the prosecutor, Joyce Dougherty, and Wright. The conversation had taken place prior to the preliminary hearing and the tapes had been turned over to the defense. Side two of tape three was blank. However, when Cheryl listened to the copies lodged with the court, she discovered recorded conversation on side two of the tape.

On the tape Wright asked Dougherty if she could bring notes with her to the hearing. Dougherty asked if the notes were the ones Wright had previously given to her and which she, in turn, had passed on to the defense attorney. Wright stated that they were her mother's notes of a conversation

they had had while Wright was in the hospital. Dougherty asked to see them. Wright said "okay" and appeared to shuffle and handle some papers. Wright continued, "I have to go through all this stuff 'cause I have things in here that might help. I have a letter to my brother that I wrote after I left that has things I remember a lot more than I do now. It might help." The tape recording ends after a few moments of silence.

After the tape was discovered, Gallo brought a petition for habeas corpus in Santa Clara County Superior Court. Gallo alleged, among other things, that the prosecution had suppressed evidence that was materially favorable to his case and that as a result, he was denied due process of law. After an evidentiary hearing, Superior Court Judge Chang found that the prosecution had not withheld Wright's letter or her mother's notes. Judge Chang did find that the prosecution had suppressed the tape recording (tape three, side two), but concluded that the taped statements were cumulative, not material, evidence. Accordingly, Gallo's petition was denied.

In the present petition, Gallo asks this Court to revisit these due process claims and other claims previously addressed by the California Court of Appeal and Supreme Court. Gallo argues that he was denied due process of law by the prosecution's failure to disclose evidence material to Wright's credibility. Specifically, Gallo alleges that the prosecution withheld the tape recording, Wright's letter to her brother, her mother's notes, and knowledge of Wright's personal relationship with an investigating officer. Further, Gallo alleges that he was denied due process when the prosecutor failed to recuse herself after becoming emotionally involved in the case. Lastly, Gallo claims he was denied effective assistance of counsel when his trial attorney failed to impeach Wright with prior inconsistent statements.

For the following reasons, Gallo's due process claims are DISMISSED.

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

Gallo alleges that he was deprived of his Sixth Amendment right to adequate assistance of counsel when his trial counsel failed to attempt to impeach Wright's testimony with prior inconsistent statements. Gallo asserts that but for this error he would not have been convicted of the three sex offenses.

The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The *Strickland* court set forth a two-part test for ineffective assistance of counsel claims. First, a habeas petitioner must show that counsel's performance was deficient and fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 2064. Judicial scrutiny of counsel's performance must be deferential. Because of the difficulties inherent in making the evaluation, the courts must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* Second, petitioner must show that the deficient performance prejudiced his defense. The test for prejudice requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068.

Examining the trial record, the Court finds that Gallo has not shown deficient performance by his trial counsel. The record shows that Gallo's counsel made a tactical decision not to use Wright's inconsistent statements to impeach her. It is well settled that impeachment strategy is a matter of trial tactics. *Gustave v. United States,* 627 F.2d 901, 906 (9th Cir.1980). Tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available. *Bashor v. Risley,* 730 F.2d 1228, 1241 (9th Cir.1984), *cert. denied,* 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984). Further, a mere difference of opinion as to trial tactics does not constitute denial of effective assistance. *United States v. Mayo,* 646 F.2d 369, 375

(9th Cir.1981), *cert. denied sub nom., Dondich v. United States*, 454 U.S. 1127, 102 S.Ct. 979, 71 L.Ed.2d 115 (1981).

Trial counsel Bauer recognized several inconsistencies in Wright's statements. When Gallo first made his ineffective assistance claim, in state court, Bauer testified that he consciously decided not to use the inconsistencies to impeach Wright. This decision was a tactical one, based on Wright's impact on the jury during direct examination. Wright testified at length to the numerous brutal beatings and the sexual attacks she received from Gallo. Bauer noticed three jurors crying, and concluded that there was an unacceptable risk that the jury would feel he was pursuing "little picky things" if he attempted to impeach Wright. Bauer's decision not to impeach Wright with her inconsistent statements was within the wide range of reasonable professional judgment.

■ Even assuming, *arguendo*, that Bauer's conduct was unreasonable, Gallo does not meet the second prong of *Strickland*. Gallo has not shown sufficient prejudice as a result of Bauer's failure to impeach Wright with prior inconsistent statements. Gallo contends that had Wright been impeached, there would have been a reasonable probability that the jury would have acquitted on the three sex offenses.

Gallo bases his position on the fact that he was acquitted on the one sex offense involving Kim Sherry. Sherry was impeached with the fact that she did not mention the sodomy when she told the police about the various crimes Gallo perpetrated against her. Gallo argues that because Sherry's impeachment resulted in his acquittal on that sex offense, Wright's impeachment would necessarily result in his acquittal. The Court disagrees. Every witness testifies differently. The jury takes into account not only the differences in factual content, but also the witness' demeanor and the emotion they convey when making credibility determinations. Sherry and Wright are different witnesses, and as such, the fact that the jury acquitted Gallo of a sex offense as to one count has no bearing on his guilt as to the other. Accordingly, the Court does not find ineffective assistance of counsel.

## B. *Due Process—Alleged Brady Violations*

### 1. *The Tape*

■ A prosecutor has a duty to reveal exculpatory evidence. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecutor. *Id.* Material evidence is that which, if made available, would tend to exculpate or reduce the penalty. *Id.* Thus, there is constitutional error only if there exists a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). There is no violation of due process where the evidence demonstrates only "a mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial." *United States v. Agurs*, 427 U.S. 97, 109–12, 96 S.Ct. 2392, 2400–02, 49 L.Ed.2d 342 (1976).

■ The duty to disclose evidence favorable to the accused extends to evidence which may reflect on the credibility of a material witness. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). There is no distinction between impeachment and exculpatory evidence. *Bagley*, 473 U.S. at 676, 105 S.Ct. at 3380.

Neither party disputes that the prosecution withheld the tape. The parties do contest, however, whether the tape is material to Gallo's guilt or innocence.

Gallo argues that Wright's taped statement, "I have a letter to my brother that I wrote after I left that has things that I remember a lot more than I do now," is material to his case. Gallo relies primarily on the "time-fixing" aspect of the statement. He argues that Wright admits to having a better recollection of the incident at the time of the initial police reporting. Therefore, he argues, that Wright's subsequent allegations

of a second sodomy and oral copulation are questionable.

■ Gallo fails to demonstrate a reasonable probability that had the tape been revealed, the result of the proceeding would have been different. The taped statement is cumulative evidence. The record is replete with evidence of Wright's memory loss. Sergeant Mosunic's police report, written just after Wright left Gallo, states, "She indicated she has a memory loss due to the severe injuries that she has received from her husband and that she still has problems now. She indicated she has a memory loss and cannot really remember all of the true facts." At trial, Wright herself testified, "Sometimes if I am concentrating on this and I am thinking about it, I am able to remember a day when I know that I was getting beaten that I hadn't been able to remember before, or different things that happened or a different order than I had remembered before." Dr. Ginter testified that, "since she had had injury to her brain there was likely an organic factor that made her have memory difficulty." Additionally, Dr. Ginter testified that a psychologist gave Wright a test which confirmed her loss of memory. Lastly, Dr. Lages testified, "She had some problems with her memory."

In light of the testimony regarding Wright's impaired recollection, the taped statement is not material. A State's failure to disclose testimony of a witness which would only have been cumulative and would not have revealed anything new on the issue of defendant's guilt or innocence, does not violate due process. *Ashker v. Solem*, 457 N.W.2d 473 (S.D.1990). The record as a whole creates doubt as to Wright's ability to accurately report the events at any point in time. Wright herself testified that she had had problems recalling the details of the offenses from the time of the initial reporting up until the time of trial. Additionally, significant medical testimony was presented on Wright's severe head injuries and its affect on her memory. Despite this, the jury found Wright to be a credible witness and resolved all doubts in her favor. Gallo was convicted on the three sex counts. Therefore, Wright's taped statement would not have had a material affect on the trial outcome.

Alternatively, Gallo argues that the net cumulative affect of all the evidence withheld, namely the tape, letter and notes, raised a reasonable probability that disclosure of the evidence would have produced a different result. Petitioner relies upon *Kyles v. Whitley*, —— U.S. ——, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), for this proposition. However, as discussed below, this Court adheres to the trial court's finding that the letter and notes were not withheld by the prosecution. Accordingly, the Court does not address this issue.

### 2. The Letter and Notes

■ A state court's determination on the merits of a factual issue are entitled to a presumption of correctness on federal habeas review. 28 U.S.C. § 2254(d). Such findings will not ordinarily be disturbed unless they are "clearly erroneous" or "not fairly supported by the record." *Id.* While a few circuits have declined to accord such deference to conclusions based solely on documentary evidence, (see e.g. *Moore v. Maggio*, 740 F.2d 308 (5th Cir.1984), *Merchants Nat'l. Bank & Trust Co. v. United States*, 246 F.2d 410 (7th Cir.1957)), the Ninth Circuit Court of Appeals does not distinguish between factual findings founded upon testimonial evidence and those founded upon documentary evidence. *Lundgren v. Freeman*, 307 F.2d 104, 114 (9th Cir.1962).

Gallo contends that the trial court's finding that the letter and notes were not in the possession of the prosecution is not fairly supported by the record. Alternatively, he argues that the finding is not entitled to deference since the trial court heard "no testimony and did not base its decision on observing the demeanor of witnesses."

■ This court disagrees. The record provides ample support for the trial court's finding that the prosecution had not withheld the letter or notes. The People offered Dougherty's declaration that neither item had been found during a file search. The People also offered a paralegal's declaration that she had called Wright, and that Wright

told her she did not remember writing a letter to her brother. During the conversation with the paralegal Wright also stated that her mother had taken notes of a conversation at home, but not at the hospital as the tape indicated. Further, Wright stated that she had not given these writings to Dougherty.

The prosecution also offered a letter from Wright, written on July 10, 1993. In the letter Wright stated that she had found a letter written to her brother, but that it did not contain any reference to the three sex offenses. Additionally, Wright wrote that she had found her own notes, and believed she had incorporated her mother's notes into her own. These notes had previously been disclosed to the defense.

Gallo argues that the "rustling paper" sounds on the tape clearly indicate that the letter and notes were handed over to the prosecution. Gallo's contention is without merit. The recorded sounds are ambiguous. The sounds could just as easily be interpreted to be Wright looking through her belongings for the items. There is no other evidence in the record from which this court could conclude that Wright had either the letter or notes with her, or that she turned them over to the prosecution. Thus, the trial court's finding is fairly supported by the record and not clearly erroneous. Gallo's due process claim regarding the letter and notes is DISMISSED.

### 3. The Victim's Relationship with the Investigating Officer

Gallo contends that the prosecution's failure to disclose information about Wright's romantic relationship with a Redwood City police officer is a violation of his due process rights under *Brady*. Gallo claims that at some point during the proceedings, Wright became involved with Officer Prevot and subsequently married him. Prevot initially investigated Wright's claim of sexual assault in the hospital. However, Prevot did not testify at Gallo's trial.

Gallo claims that "information about Wright's relationship and marriage to Prevot was material evidence bearing on Wright's credibility." Specifically, Gallo argues that

he could have attempted to show that Wright's testimony about the sex offenses had "jelled" at the time of trial because of "information she had received from Prevot." Gallo argues he would have suspected that "the testimony about the sex offenses was so cursory and indefinite because it was a conscious or unconscious fabrication or exaggeration stemming from discussions with Prevot." Additionally, Gallo states he would have attempted to show that Prevot, based on his police experience, suggested that Wright change the location of the sodomy from the hospital to her home.

Gallo cites no pertinent authority to support his contention that evidence of Wright and Prevot's relationship is material. Gallo relies on two California Court of Appeal cases involving misconduct by the defense counsel. Those cases are inapposite. In *People v. Singer*, 226 Cal.App.3d 23, 275 Cal.Rptr. 911 (1990), defendant's trial attorney was romantically involved with the defendant's wife. Likewise, in *People v. Jackson*, 167 Cal.App.3d 829, 213 Cal.Rptr. 521 (1985), defense counsel was involved with the prosecuting attorney. Gallo urges this Court to analogize Wright's relationship with Prevot to the relationships in *Jackson* and *Singer*. Gallo claims that the State, acting through the police officer, is involved in the impropriety. Therefore, he claims, the evidence is material.

Respondent however, contends that this evidence was not suppressed. Alternatively, Respondent claims that the relationship between Wright and Prevot is not material.

The court agrees. It is not clear from the evidence presented by Gallo whether the prosecution withheld information of the relationship. Gallo offers as proof letters sent from his counsel to Dougherty asking for acknowledgment of its existence. Dougherty refused. Therefore, Gallo asks that this court grant an evidentiary hearing to determine whether the information was suppressed.

This court declines to do so. In order for the suppression of evidence to constitute a violation of due process, the evidence must be sufficient to undermine confi-

dence in the outcome of the trial. *Bagley,* 473 U.S. at 668, 105 S.Ct. at 3376. Prevot's involvement in the case was limited solely to the events occurring in Redwood City. Prevot was not a witness in the Santa Clara County case against Gallo. Moreover, Wright and Prevot's conduct does not rise to the level of gross impropriety practiced by defense counsel in *Jackson* or *Singer.* The affect of their relationship on the trial is far more attenuated. Accordingly, Gallo's due process claim is DISMISSED.

## C. Due Process—Recusal

A criminal defendant is entitled to an impartial prosecutor who can make an unbiased use of all the options available to the prosecutor's office. *Jones v. Richards,* 776 F.2d 1244, 1247 (4th Cir.1985). However, review of claimed due process violations in a state court proceeding is narrow. *Newman v. Frey,* 873 F.2d 1092, 1093 (8th Cir. 1989). A court may only grant relief if a prosecutor's misconduct affects the fairness of the trial. *Id.* Gallo contends that he was denied due process of Law in violation of the Fourteenth Amendment to the United States Constitution when the superior court failed to recuse deputy district attorney Dougherty. Gallo asserts that Dougherty's actions showed a personal and emotional involvement in his prosecution. He argues that he was prevented from receiving a fundamentally fair trial, with an impartial prosecutor. This Court disagrees.

Gallo points to several actions taken by Dougherty to support his position. Gallo argues that Dougherty's unique treatment of his case demonstrated her hostility toward him. Gallo takes exception to the following actions: Wright was the only victim that Dougherty ever visited in the hospital; Wright was the only victim whose divorce proceedings she attended; Gallo's case was the only non-homicide case in which Dougherty opposed bail; Gallo's case was the only case in which she urged a municipal court preliminary examination even though the defendant did not have counsel; Dougherty did not let her plea bargain stand until the time of trial; and lastly, Dougherty contacted the appointment administrator about her objec-tion to an able and well known attorney. The state appellate court found that the record provided valid explanations for each of these actions. Additionally, they found that Dougherty prosecuted petitioner vigorously, and did not deprive him of a fair trial. After careful review of the record, this Court agrees.

Gallo asks this Court to speculate as to the insidious nature of Dougherty's actions. There are any number of legitimate explanations for the actions taken by Dougherty. Dougherty's failure to recuse herself is not a due process violation. Accordingly, this claim is DISMISSED.

Lastly, the Court is in receipt of communication from one of Petitioner's attorneys purporting to point out new, pertinent case law of another circuit. The Court has reviewed the proffered case finds this case inapposite from the instant matter.

For the foregoing reasons, Petitioner's Petition for a Writ of Habeas Corpus is DENIED.

IT IS SO ORDERED.