MICHAEL K. RANDOLPH, PRESIDING JUSTICE FOR THE COURT
Now before the en banc Court is Montrell Jordan's Application for Leave to File Second Motion for Post-Conviction Relief. The State of Mississippi's response is also before us.
Jordan filed this, his second, application outside the three-year statute of limitations. He claims trial and appellate counsel were ineffective for three reasons.
First, Jordan says trial counsel's undisclosed romantic relationship with the State's chief investigator and key trial witness created an actual conflict of interest. Jordan raised this argument in his first application and in federal habeas proceedings. Jordan v. Epps , No. 3:09CV544-DPJ-FKB, 2012 WL 5997046, at **13-15 (S.D. Miss. Aug. 8, 2012), report and recommendation adopted , No. 3:09CV544-DPJ-FKB, 2012 WL 5997024 (S.D. Miss. Nov. 30, 2012).
Second, Jordan argues trial counsel was ineffective for failing to object to reversible prosecutorial misconduct. Jordan raised this claim in federal habeas proceedings. Jordan , 2012 WL 5997046, at *16, report and recommendation adopted , 2012 WL 5997024 (S.D. Miss. Nov. 30, 2012).
Finally, Jordan asserts appellate counsel was ineffective for failing to cite authority or the record, which resulted in a procedural bar.
After due consideration, we find the first and second claims are barred by the doctrine of res judicata. Crawford v. State , 218 So.3d 1142, 1152-55, 1161 (Miss. 2016) ; Gilliard v. State , 614 So.2d 370, 373 (Miss. 1992). Notwithstanding the res judicata bar, we find all three claims are insufficient to surmount the time, waiver, and successive-writs bars. See Bevill v. State , 669 So.2d 14, 17 (Miss. 1996).
IT IS THEREFORE ORDERED that the application is denied.
SO ORDERED, this the 14th day of February, 2018.
TO DENY: RANDOLPH, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ.
KITCHENS, P.J., OBJECTS TO THE ORDER WITH SEPARATE WRITTEN STATEMENT JOINED BY KING, J.
WALLER, C.J., NOT PARTICIPATING.
KITCHENS, PRESIDING JUSTICE, OBJECTING TO THE ORDER WITH SEPARATE WRITTEN STATEMENT:
¶ 1. I respectfully disagree with this Court's decision. Montrell Jordan's claim of ineffective assistance of counsel is based on the undisputed fact that defense counsel was romantically involved with a key witness for the prosecution at all stages of the lawyer's representation. Defense counsel, Akillie Malone, was residing with the lead investigator in the case against Jordan, Officer Lacarus Oliver, at the time of the pretrial, trial, and post-trial proceedings. Six months after Jordan's conviction, *572 Attorney Malone and Officer Oliver were married to each other. Because Jordan never was informed of this conflict, he had no opportunity either to waive the conflict knowingly and intelligently or to obtain other, conflict-free representation. Because this serious conflict of interest compromised the integrity of criminal proceedings against Jordan, I would find that it was presumptively prejudicial and denied him the constitutional guarantees of a fair trial with the effective assistance of conflict-free counsel. Accordingly, I would grant Jordan's application to proceed with a motion for post-conviction relief (PCR), reverse the conviction, and remand for a new trial.
Facts
¶ 2. Jordan was convicted of depraved-heart murder and received a life sentence. He was represented by Lawyers Akillie Malone and Antwayn Patrick. At some point after the trial, Jordan discovered that Attorney Malone had been romantically involved with the lead investigator on the case. This investigator, Officer Oliver of the Mississippi Bureau of Investigation, had taken the primary role in gathering evidence against Jordan, including an interview of him after his arrest. Oliver was a major witness against Jordan. The pretrial and trial testimony of Officer Oliver total approximately one hundred pages of transcript. At a pretrial hearing on a defense motion to suppress Jordan's audiotaped statement, Attorney Malone cross-examined Officer Oliver about Jordan's interview. And at trial, Attorney Malone cross-examined Officer Oliver about his investigation of the case, including Jordan's arrest, his interview, witness statements, a gunshot residue test, and the development of Jordan as the sole suspect. All the while, Jordan knew nothing of his lawyer's relationship with this key prosecution witness.
¶ 3. According to an affidavit from Antwayn Patrick attached to Jordan's PCR application, Attorney Patrick-Jordan's other defense lawyer-had known of the romantic relationship between Attorney Malone and Officer Oliver during his representation of Jordan. He swore that neither he nor Attorney Malone ever had informed their client of this romantic relationship.
¶ 4. After Jordan's discovery of defense counsel's conflict, he filed his first application for a motion for PCR with this Court, and a three-judge panel denied the claim in a single sentence: "[t]he panel further finds that the claim of ineffective assistance of counsel fails to meet the test set forth in Strickland v. Washington , 466 U.S. 668[, 104 S.Ct. 2052, 80 L.Ed.2d 674] (1984) [,] and that the application should be denied." Jordan then raised the issue in his federal habeas corpus proceedings. In his report and recommendation, Magistrate Judge F. Keith Ball found that the threshold issue was whether to apply the two-prong test from Strickland , requiring a showing that counsel's deficient performance prejudiced the defendant, or the test from Cuyler v. Sullivan , 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), in which the defendant is relieved of the burden to demonstrate prejudice and must show only that an actual conflict of interest adversely affected the adequacy of counsel's representation. Judge Ball found that, although Jordan's case involved a conflict of interest, the test from Strickland should apply. This was because the United States Supreme Court has applied the Cuyler test only in cases involving conflicts stemming from counsel's representation of multiple defendants.
¶ 5. Applying the Strickland test, Judge Ball found that Attorney Malone's failure to disclose her relationship with Oliver to Jordan was deficient performance. But *573 Judge Ball made the additional finding that Jordan had failed to make any showing that he had been prejudiced by Attorney Malone's deficient performance. Judge Ball found from a review of the transcript that Attorney Malone had "cross-examined Oliver ably."
At the suppression hearing she questioned him vigorously as to why the tape recorder was not turned on during the time he read Jordan his rights and why Jordan had refused to sign the rights waiver form, and she challenged the inconsistency in his testimony as to whether Jordan asked the officers whether he needed an attorney. After Oliver's direct testimony at trial, which consisted primarily of a discussion of his interview with Jordan and reading from the transcript of the interview, Malone attempted to establish on cross-examination that Jordan had maintained his innocence during the interview in spite of Oliver's repeated efforts to pressure him into a confession. She also attempted to show that his investigation had been incomplete.
Because Jordan had not shown prejudice, Judge Ball found that he was entitled to no relief on his ineffective assistance of counsel claim.
¶ 6. The United States District Court for the Southern District of Mississippi adopted Judge Ball's opinion as the opinion of the court. The district court provided additional analysis of Jordan's ineffective assistance of counsel claim. The district court found that the facts underlying the claim were troubling and that this Court's one-sentence adjudication of the claim was limited, but that our decision was entitled to deference nonetheless. The district court found that it was reasonable for this Court to review Jordan's claim under Strickland rather than Cuyler , because the United States Supreme Court has not expanded Cuyler 's application beyond claims of conflicts engendered by multiple representation. And, in Beets v. Scott , 65 F.3d 1258, 1265-66 (5th Cir. 1995), an en banc decision of the Fifth Circuit had limited Cuyler to cases involving multiple representation. After finding no error in the application of Strickland rather than Cuyler , the district court noted its agreement with Judge Ball's finding that Jordan had failed to show prejudice, specifically, a reasonable likelihood that the outcome of the proceeding would have been different but for Attorney Malone's deficient performance.
The instant case
¶ 7. Jordan now brings his ineffective assistance of counsel claim before this Court in his second application for leave to proceed with a motion for post-conviction relief. Although his claim technically is time-barred, barred as a successive pleading, and barred under the doctrine of res judicata by the Uniform Post-Conviction Collateral Relief Act (UPCCRA), I would allow his claim to proceed because, not only does Jordan assert the violation of a fundamental right, he has provided an arguable basis for the claim. "[E]rrors affecting fundamental constitutional rights are excepted from the procedural bars of the UPCCRA." Rowland v. State , 42 So.3d 503, 507 (Miss. 2010). The claim must have an arguable basis. Means v. State , 43 So.3d 438, 442 (Miss. 2010). In Bevill v. State , 669 So.2d 14, 17 (Miss. 1996), this Court signaled that a sufficiently egregious instance of ineffective assistance of counsel could warrant an exception to the bars of the UPCCRA and enable judicial review. "It is conceivable that under the facts of a particular case, this Court might find that a lawyer's performance was so deficient, and so prejudicial to the defendant, that the defendant's fundamental constitutional *574 rights were violated." Id. I submit that the undisputed facts demonstrate such an egregious and clear denial of Jordan's fundamental constitutional rights to the effective assistance of counsel and a fair trial that his particular claim should be excepted from those provisions of the UPCCRA that otherwise would bar review.
¶ 8. Due process guarantees a criminal defendant the fundamental right to a fair trial. Strickland , 466 U.S. at 684, 104 S.Ct. 2052. The right to the effective assistance of counsel is secured by the Sixth and Fourteenth Amendments to the United States Constitution. U.S. Const. Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence"); U.S. Const. Amend. XIV. The Mississippi Constitution also guarantees the effective assistance of counsel. Miss. Const. Art. 3, § 26 ("In all criminal prosecutions, the accused shall have the right to be heard by himself or counsel, or both ...."). Additionally, a defense attorney has a duty of undivided loyalty to the client that "is essential to the due process guarantee of the Fifth Amendment." Littlejohn v. State , 593 So.2d 20, 23 (1992). See also Miss. Const. Art 3, § 14 ("No person shall be deprived of life, liberty, or property except by due process of law").
¶ 9. To succeed on a typical claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient, and that the deficient performance prejudiced the defense. Strickland , 466 U.S. at 687, 104 S.Ct. 2052. To show prejudice, the accused must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. But where the ineffectiveness alleged is a conflict of interest and a resultant breach of the duty of loyalty, the Supreme Court has applied a different test. As explained in Strickland , in Cuyler v. Sullivan , 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L. Ed. 2d 333 (1980), the Supreme Court held that, when no objection was raised at trial and counsel had an actual conflict of interest that adversely affected his lawyer's performance, prejudice will be presumed. Strickland , 466 U.S. at 692, 104 S.Ct. 2052. Cuyler had involved a conflict arising from multiple representation, and in Mickens v. Taylor , 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), the Supreme Court noted that Cuyler might not apply to other types of conflicts. As discussed above, in Beets , the Fifth Circuit limited Cuyler to instances of multiple representation, with all other conflicts to be adjudicated under Strickland. Beets , 65 F.3d at 1265-66. In this case, the district court applied these principles of federal law to conclude that Jordan's claim must be analyzed under Strickland and that, because he cannot show outcome-determinative prejudice, his claim fails.
¶ 10. But this Court has promulgated a stronger standard to assure that criminal defendants in Mississippi state courts receive the assistance of conflict-free counsel. In Armstrong v. State , 573 So.2d 1329, 1331 (Miss. 1990), we recognized that adept representation encompasses minimum competence and loyal assistance. "Effective assistance of counsel envelops conflict-free representation." Id. In Littlejohn , we held that, when there is an actual conflict of interest, "[t]he conflict itself demonstrates a denial of the right to have the effective assistance of counsel." Littlejohn , 593 So.2d at 22. "Under our system of jurisprudence, if a lawyer is not one hundred percent loyal to his client, he flunks." Littlejohn , 593 So.2d at 22.
¶ 11. The Mississippi Rules of Professional Conduct prohibit a lawyer from representing conflicting interests without the client's knowing and informed consent.
*575 Miss. R. Prof'l Conduct 1.7. Rule 1.7(b) provides:
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless the lawyer reasonably believes:
(1) the representation will not be adversely affected; and
(2) the client has given knowing and informed consent after consultation. The consultation shall include explanation of the implications of the representation and the advantages and risks involved.
Miss. R. Prof'l Conduct 1.7(b). This ethical requirement reflects the vital fact that "[l]oyalty is an essential element in the lawyer's relationship to a client." Miss. R. Prof'l Conduct 1.7 cmt. If a conflict arises during trial, the attorney has a duty to advise the court promptly. Cuyler , 446 U.S. at 346, 100 S.Ct. 1708.
¶ 12. In Kiker v. State , 55 So.3d 1060, 1066 (Miss. 2011), defense counsel also represented the jailhouse informant who had provided the key testimony against Kiker that defeated his defense of accident. This Court unanimously reversed, holding that "[w]hen the accused is represented by an attorney with an actual conflict of interest, the accused has received ineffective assistance of counsel as a matter of law ...." Relying on language from Armstrong and Littlejohn , Kiker held that, when there was an actual conflict and the defendant did not knowingly and intelligently waive the constitutional right to conflict-free representation, reversal is automatic, and no showing of prejudice is required. Id. Thus, Kiker held, "the standard set out in Strickland ..., requiring a showing of 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' is inapplicable to cases when the defendant's attorney 'actively represented conflicting interests.' " Id. Kiker further held that, when "an actual conflict is demonstrated, a showing of specific prejudice is not necessary, for to hold otherwise would engage a reviewing court in unreliable and misguided speculation as to the amount of prejudice suffered by a particular defendant." Id. (quoting Littlejohn , 593 So.2d at 25 ). The Court held that it is when a potential, rather than an actual, conflict is demonstrated, such as undertaking dual representation of codefendants without an objection, that the defendant must show the potential conflict actually affected the adequacy of the representation, a lesser showing than the proof of prejudice required under Strickland and comparable to the Cuyler test. Kiker , 55 So.3d at 1066. While this Court has questioned Kiker , Crawford v. State , 192 So.3d 905, 917 (Miss. 2015), it has not been overruled and, as reflected in subsequent case law, Rowsey v. State , 188 So.3d 486, 498 (Miss. 2015), it continues to provide the standard in Mississippi for analyzing claims of ineffective assistance of counsel based upon a conflict of interest.
¶ 13. In reviewing Jordan's claim, this Court is not bound by federal precedent in this area. Rather, we are empowered to construe the right to counsel afforded by our state constitution more broadly than the corresponding federal constitutional provision. We have articulated that
[w]e accord to the U.S. Supreme Court the utmost respect in its interpretation of the U.S. Constitution. We must, however, reserve for this Court the sole and absolute right to make the final interpretation of our state Constitution and, while of great persuasion, we will not concede that simply because the U.S. Supreme Court may interpret a U.S. Constitutional provision that we must *576 give the same interpretation to essentially the same words in a provision of our state Constitution.
Penick v. State , 440 So.2d 547, 551 (Miss. 1983). Thus, it matters not that Cuyler , Mickens , Beets and related federal cases have not embraced broad protections such as those articulated in Kiker , and that the district court did not afford Jordan any relief under federal standards. Under the law of this state, Jordan is entitled to relief.
¶ 14. Kiker provides that, when an actual conflict of interest exists between defense counsel and client, the defendant need not show any specific prejudice to the defense. Jordan has produced an abundance of evidence of an actual conflict. Defense counsel, Malone, was living with the lead witness against her client at all stages of the representation, and she married that witness six months after the trial. The interests of an attorney representing a criminal defendant and the State's lead investigator are diametrically opposed. Oliver's job was to build the strongest possible case for the conviction of Jordan, and Malone's job was to thwart that undertaking. I would find that, when defense counsel is in a committed romantic relationship with the lead prosecution witness, that is an actual conflict of interest. Therefore, no showing of prejudice is required, and Jordan is entitled to a new trial.
¶ 15. The Court of Appeal for the Third District of California confronted a similar situation. People v. Jackson , 167 Cal.App.3d 829, 213 Cal.Rptr. 521 (Cal. Ct. App. 1985). There, defense counsel had dated the prosecutor for eight months before the defendant was tried, and the two lawyers met on a regular basis for movie and dinner dates throughout the proceedings against the defendant. Id. at 831, 213 Cal.Rptr. 521. However, unlike the scenario presented by this case, they never lived together and never married. Id. Citing the need for public confidence in the integrity and impartiality of the judicial system, the Court of Appeal found that, as a matter of state law, prejudice would be presumed. Id. at 832, 213 Cal.Rptr. 521. The court stressed the need to avoid even an appearance of impropriety, and it recognized the perils inherent in this particular breed of conflict:
As distinct from parties to casual social contacts, those who are involved in a sustained dating relationship over a period of months are normally perceived, if not in fact, as sharing a strong emotional or romantic bond. Such an apparently close relationship between counsel directly opposing each other in a criminal prosecution naturally and reasonably gives rise to speculation that the professional judgment of counsel as well as the zealous representation to which an accused is entitled has been compromised. No matter how well intentioned defense counsel is in carrying out his responsibilities to the accused, he may be subject to subtle influences manifested, for example, in a reluctance to engage in abrasive confrontation with opposing counsel during settlement negotiations and trial advocacy.
Id. at 832-33, 213 Cal.Rptr. 521 (citations omitted). Although this case involves the prosecution's lead investigator rather than opposing counsel, these same considerations were present.
¶ 16. It may well be, as the magistrate judge and the district court found in Jordan's habeas proceedings, that a facial review of the cold record seems to reflect that Attorney Malone was highly professional and that she credibly cross-examined her paramour. But this Court cannot know what other areas of inquiry an independent lawyer might have explored on cross examination. We do not know what *577 was left undone and unsaid. Attorney Malone was sufficiently unscrupulous that she chose not to inform the court of a glaring conflict that placed her at odds with her client. Attorney Malone and Oliver lived together during the trial, and it is strains credulity to imagine that they never talked about Malone's impending examination of Oliver, especially considering that Malone lacked the professional integrity to inform her client or the court of the conflict. It is worth noting that Attorney Malone, not Attorney Patrick,[1] cross-examined Oliver on both occasions. Even if Attorney Malone and Oliver never discussed the conflict, it was for the client to decide whether to waive it.
¶ 17. Certainly, Attorney Malone committed a grave breach of her ethical obligations by failing to disclose such a patently obvious conflict to the court, opposing counsel, and, of course, her client. Had the conflict been disclosed, Jordan would have been entitled to the appointment of substitute counsel. Littlejohn , 593 So.2d at 25. It is unlikely that any defendant aware of the true state of affairs between defense counsel and the detective who had gathered the evidence against him would have chosen that lawyer to defend him. But even assuming Jordan would have and could have waived the conflict, waiver would have required the trial judge's participation by determining from Jordan's narrative statement that he knowingly and intelligently decided to proceed with counsel burdened by a conflict. Id. (quoting United States v. Alvarez , 580 F.2d 1251, 1260 (5th Cir. 1978) ). As it stands, the substantial romantic entanglement between defense counsel and the State's lead investigator denied Jordan the effective assistance of counsel as a matter of state law. The uniquely disturbing facts of this case should compel this Court to grant Jordan's PCR application and reverse and remand for a new trial.
KING, J., JOINS THIS SEPARATE WRITTEN STATEMENT.

Attorney Patrick's concealment of the relationship between Attorney Malone and Oliver violated the Mississippi Rules of Professional Conduct. Attorney Patrick violated Rule 1.4(b), which requires a lawyer to explain matters to the client to the extent reasonably necessary to enable the client to make informed decisions. Miss. R. Prof'l Conduct 1.4(b). In his affidavit, Attorney Patrick swore that he and Attorney Malone were law partners. As members of the same firm, Attorney Malone's conflict was imputed to Attorney Patrick, disqualifying him from representing Jordan absent compliance with Rule 1.7(b). Miss. R. Prof'l Conduct 1.10(a); 1.7(b). Attorney Patrick also violated his duty of candor to the court concerning his own conflict and Attorney Malone's violation of the rules. Miss. R. Prof'l Conduct 1.7 cmt.; 8.3(a). After Jordan's trial, Attorney Patrick was disbarred due to unrelated conduct.